[No. D019014. Fourth Dist., Div. One. Jan. 13, 1994.]

In re ALMA B. et al., Persons Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Plaintiff and Respondent, v.
ALMA B., Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

## COUNSEL

M. Elizabeth Handy, under appointment by the Court of Appeal, for Defendant and Appellant.

Lloyd M. Harmon, Jr., County Counsel, Susan Strom, Chief Deputy County Counsel, and Kathryn E. Krug, Deputy County Counsel, for Plaintiff and Respondent.

Barbara A. Smith, under appointment by the Court of Appeal, for Minors.

## OPINION

**HUFFMAN, J.**—Alma B. appeals an order of the juvenile court identifying adoption as the permanent placement goal for her minor children Roberto

and Alma[2] under Welfare and Institutions Code[3] section 366.26, subdivision (c)(2). Alma contends (1) the court erred in failing to find that termination of parental rights would not be detrimental to the minors, and (2) the evidence does not support the court's finding there was a probability the minors would be adopted. However, because the notice of appeal is defective, the order is not appealable and the issues raised are moot, we dismiss the appeal.

## FACTS

Roberto and little Alma were born on September 16, 1988. Roberto tested positive for methamphetamine. When the minors were 14 months old, Alma left them with an acquaintance without telling her she was leaving or where she was going. Alma did not return for more than a month.

After unsuccessfully attempting to locate the minors' family members, the San Diego County Department of Social Services (Department) filed a petition in the juvenile court on November 21, 1989, on behalf of the minors alleging the whereabouts of the mother were unknown, the father's whereabouts and identity were unknown,[4] the person having physical custody of the minors was unable or unwilling to continue caring for them and the minors were in need of the juvenile court's protection.

On December 6, 1989, Alma's whereabouts were still unknown after a reasonable search by Department. The court found by clear and convincing evidence that the allegations of the petition were true, declared the minors dependents of the juvenile court and ordered them placed in a foster home. The court further ordered Alma to comply with a reunification plan which included parenting classes and counseling.

When Alma was eventually located, Department provided her with the reunification plan and referrals to services on December 26, 1989. The reunification plan required Alma to visit the minors twice a week at the foster home. However, as of April 11, 1990, Alma's whereabouts were again unknown.

---

[2]Because mother and daughter have the same name, we refer to mother as Alma and to daughter as little Alma for clarity and convenience.

[3]All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[4]The father's identity and whereabouts continued to be unknown throughout the proceedings.

At the six-month review hearing on June 7, 1990, at which Alma was present, the court found by clear and convincing evidence that the return of the minors to Alma's custody would create a substantial risk of detriment to their physical and emotional well-being. The court continued the minors as dependents and continued their placement in foster care.

At the 12-month review hearing on December 6, 1990, Department reported to the court that Roberto was in therapy and on medication for behavior problems. Alma continued to have supervised visits with the minors and they all seemed to enjoy them. Alma was employed, beginning to participate in therapy and parenting classes and she visited the minors weekly. The court continued the minors as dependents and found there was a substantial probability they would be returned to Alma within the next six months. The court also ordered six more months of services for Alma.

At the 18-month review hearing on June 7, 1991, Department reported that Alma continued to visit the minors weekly and the minors recognized her as their mother and were bonded to her. Roberto continued in therapy and on medication. Alma had started, stopped and started again a series of parenting classes and had been inconsistent in her therapy attendance. She completed a psychological evaluation which showed her current level of functioning was "marginal" and that it would be extremely difficult for her to adequately care for the minors. Among its orders and findings, the court found the minors were not likely to be adopted,[5] there was no one available to assume guardianship and long-term foster care was the appropriate permanent plan. The court ordered Department to provide an additional six months of reunification services for Alma under section 366.3.[6] The court later gave Department discretion to allow Alma to have unsupervised overnight visits with the minors with their attorney's concurrence.

At the December 3, 1991, review hearing, Department reported that Alma continued to be employed full-time, was participating in therapy and was having successful overnight visits with the minors. The court found long-term foster care continued to be the appropriate plan.

---

[5]The minors were considered unlikely to be adopted because Department had not found any qualified prospective adoptive families. Department believed it would be difficult to find such a home because the minors were attached to their mother and to each other and because Roberto had some emotional problems.

[6]Section 366.3, subdivision (c) provides that once the court has selected a permanent plan of long-term foster care, the court may order additional services for a parent if it is in the best interest of the minor. The parent bears the burden of proving by a preponderance of the evidence that further reunification effort is the best alternative for the minor. (§ 366.3, subd. (c).)

At the June 1, 1992, review hearing, Department reported that Alma continued to visit the minors who were bonded to her and happy to see her. Overnight visits ended due to reports of emotional and physical abuse of the minors when Alma relapsed into using drugs.[7] She agreed to include drug rehabilitation and treatment in her reunification plan and to participate in another cycle of parenting classes. That same day, the minors' attorney filed a petition under section 388 for modification of the previous court orders, requesting a section 366.26 hearing be scheduled and the minors' permanent plan be changed to adoption.

The court conducted a combined review hearing and hearing on the section 388 petition. The foster mother had just given notice that she was no longer able to care for the minors. During the hearing, Alma was suffering from methamphetamine withdrawal. The court granted the section 388 petition, finding there had been a change in circumstances in that Alma was using drugs and acting bizarre, it was questionable whether the relationship between Alma and the minors benefited them and they were getting older and therefore less likely to have other permanent plan options available to them.

In a report prepared for the section 366.26 hearing, Department stated Alma had participated in an inpatient drug treatment program from early July through August 22, 1992, when she left the program, and again from October 9, 1992, through February 26, 1993, when she again left the program. Department further reported Alma had visited the minors once or twice a week between December 1989 and July 1992 and had weekly overnight visits between November 1991 and March 15, 1992. She saw the minors twice between August 22, 1992 and October 9, 1992. As of the last report dated May 13, 1993, Alma had not visited the minors since February 25, 1993.

In August 1992, Dr. Beatriz Heller prepared a bonding study and reported the minors and Alma were "emotionally attached" but the minors did not seem to perceive her as their most important caretaker. Although Dr. Heller noted the contacts between Alma and the minors were not detrimental, she was concerned they had the potential to become so. Alma showed a marked preference for Roberto over little Alma, was ineffective in initiating interaction, promoting the exploration of their environment and fostering their

---

[7]Despite Roberto's positive toxicology test for methamphetamine at birth, a report in later 1989 that Alma frequently appeared "spaced out" and accusations of Alma's employer that she abused methamphetamine, cocaine and marijuana, Department did not recognize Alma's serious drug problem until very late in the proceedings.

social skills. She was also highly emotional which could indicate difficulties relating to the minors' needs.

The section 366.26 hearing was conducted over three days. Alma was present only the first day. The court heard testimony from the director of Alma's drug rehabilitation program, the minors' former and current foster mothers, Department's assessment social worker and the minors' current social worker. After considering the evidence and testimony presented and hearing argument, the court identified adoption as the minors' permanent placement goal but deferred termination of Alma's parental rights for 60 days. The court ordered Department to make efforts to locate an appropriate adoptive family, noting that Department had unduly limited its focus and could conduct a more extensive search. In evaluating the possible effects of terminating Alma's parental rights, the court noted it was difficult to find that contact between Alma and the minors had been beneficial. Alma's counsel filed a notice of appeal from the order declaring adoption as the minors' permanent placement goal.

In a supplemental assessment dated May 13, 1993, Department advised the court that Alma's whereabouts were still unknown. Department had also received names of prospective adoptive families from Catholic Charities and other agencies and noted there was a prospective adoptive family in the early stages of a home study.

Department subsequently advised the court that a prospective adoptive family of Mexican descent had been located. The family was aware of Roberto's problems and was amenable to an open adoption. On July 12, 1993, the court found by clear and convincing evidence the minors were adoptable and terminated Alma's parental rights.[8]

## DISCUSSION

■ Alma contends the court's order of adoption as the minors' permanent placement goal under section 366.26, subdivision (c)(2) was improper. Both Department and minors' counsel urge us to dismiss Alma's appeal because she never authorized the filing of the notice of appeal, the appeal was taken from findings and orders which are not appealable and the appeal is moot due to the later order terminating her parental rights. We agree the appeal must be dismissed.

---

[8]We granted Department's request for judicial notice and augmentation of the record on appeal to include these documents.

## I

Under California Rules of Court,[9] rule 1, a notice of appeal must be signed "by the appellant or by his attorney . . . ." (See *Seeley* v. *Seymour* (1987) 190 Cal.App.3d 844, 853 [237 Cal.Rptr. 282] [rule 1 satisfied where any person authorized by the appellant signs on his or her behalf].) Because an attorney cannot appeal without the client's consent, a notice of appeal shown to have been signed by an unauthorized attorney is ineffectual in preserving the right to appeal. (*Guardianship of Gilman* (1944) 23 Cal.2d 862, 864 [147 P.2d 530]; *Isom* v. *Slaughter* (1962) 200 Cal.App.2d 700, 705 [19 Cal.Rptr. 541].)

Here, Alma was not present at the hearing on March 22, 1993, when the court made the findings and orders from which she purports to appeal. Department has not known Alma's whereabouts since she left the drug rehabilitation program on February 26, 1993. Nor did Alma's counsel, who signed the notice of appeal on her behalf, know her whereabouts.[10] Instead, his declaration stated: "Based on my contact with my client in this case I know that she objects to the termination of her parental rights. [Alma] has always communicated to me a desire to have custody of her children. . . . Since it is my belief that my client would desire a review of this case I have filed the Notice of Appeal without her personal signature."

Counsel did not state he had been specifically authorized by Alma to sign the notice of appeal. His stated belief that Alma wanted custody of the minors and objected to termination of her parental rights did not give him authority to appeal on her behalf an order identifying adoption as the permanent placement goal.[11] Indeed, Alma's actions in failing to comply with her reunification plan by absconding from her drug rehabilitation program, failing to appear for the section 366.26 hearing and ultimately abandoning her children one last time in February 1993 belie counsel's claim that Alma wanted custody of the minors or intended to object to termination of her parental rights. Because we cannot impute Alma's authorization for her trial counsel to appeal orders made after her disappearance, the appeal must be dismissed.

## II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

[9]All rule references are to the California Rules of Court.

[10]Moreover, we presume appellate counsel could not locate Alma based on the lack of service of the brief on her.

[11]Ironically, our records show neither Alma nor her attorney has filed a notice of appeal from the order terminating Alma's parental rights.

*See footnote 1, *ante*, page 1037.

## DISPOSITION

Appeal dismissed.

Benke, Acting P. J., and Froehlich, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 31, 1994.