[No. G017254. Fourth Dist., Div. Three. Apr. 3, 1995.]

GUILLERMO G., Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
ORANGE COUNTY SOCIAL SERVICES AGENCY et al., Real Parties
in Interest.

suggest a continuing interest in parental rights. (Opinion by Sills, P. J., with Sonenshine and Wallin, JJ., concurring.)

**COUNSEL**

Ronald Y. Butler, Public Defender, Carl C. Holmes, Carol E. Lavacot and Lee A. Town, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Terry C. Andrus, County Counsel, and Margaret E. Eastman, Deputy County Counsel for Real Parties in Interest.

Harold La Flamme and Craig E. Arthur for minors.

**OPINION**

**SILLS, P. J.—**

I

Brianna and her sister Chelsea were declared dependents of the juvenile court in 1992, a few months after Chelsea was born suffering from cocaine addiction. The children were placed with their maternal grandmother. The case progressed to a 12-month review in August 1993. At the time the children's father, Guillermo G., was incarcerated in the Orange County jail. At the hearing he waived his right to further reunification services over the "strong objection" of his appointed counsel, though the court did make an order that he have one hour visitation every two weeks while he was in custody. The court went on to determine that reasonable reunification services had been offered and that it would be detrimental to the children to return them to their parents. However, the court also found that the children

were not likely to be adopted, and no one was willing to accept legal guardianship. The court ordered reunification services terminated and the children placed in long-term foster care, where they remained for the next 16 months.

By January 1995 the maternal grandmother desired legal guardianship, so social workers recommended that a hearing be set to select and implement guardianship as the permanent plan for the children. Such hearings are authorized under section 366.26 of the Welfare and Institutions Code, and are sometimes referred to as ".26" hearings.[1]

On February 3, 1995, the court held a hearing on the question of whether to set a .26 hearing. Guillermo had just recently been released from incarceration and had been given notice of the hearing, but did not appear. The juvenile court adopted the social workers' recommendation and set a .26 hearing for June 1995.

Three days later, on February 6, the public defender who had been representing the father filed a notice of intent to file a writ petition. The father did not sign the notice, nor is there any indication he authorized or was aware of it. The actual writ petition was filed February 27, and again there is no indication that the father personally authorized its filing.

In informal responses to the writ petition, both the social services agency and counsel for the minors raised the issue of whether the father personally authorized the writ petition. (See *In re Alma B.* (1994) 21 Cal.App.4th 1037 [26 Cal.Rptr.2d 592] [dismissing parent's appeal because she did not actually authorize it].) In their reply the father's lawyers virtually concede their client did not personally authorize the petition, but argue he impliedly authorized it because a social worker's report prepared in January describes him as having a "positive relationship" with the children, and he told a social worker at the end of January he hoped to "eventually regain" custody. Even if the father did not actually authorize the writ proceeding, the public defenders argue, this court should still consider the petition on the merits because of the public defender's ongoing duty to, in the words of the statute governing appointment of counsel for indigent parents, represent the father "at all subsequent proceedings." (See § 317, subd. (d).) They also point to the penal statute authorizing trial attorneys appointed to represent indigent clients to file a notice of appeal when the *attorney* believes there are grounds for reversal or modification of the judgment and it is in the defendant's "interest" to "pursue such relief." (Pen. Code, § 1240.1, subd. (b).) They are incorrect on each point.

---

[1]All statutory references in this opinion are to the Welfare and Institutions Code unless otherwise indicated.

## II

█ A client's consent is required for an *appeal* from an order setting a selection and implementation hearing. (*In re Alma B., supra*, 21 Cal.App.4th 1037.) "[A]n attorney cannot appeal without the client's consent . . . ." (*Id.* at p. 1043.) Moreover, such consent cannot be imputed from the mere fact that the attorney has a "stated belief" that the client wants custody of his or her children or objects to termination of parental rights, at least when there is some conduct belying that claim. (*Ibid.*) In *Alma B.* the court found three actions that belied counsel's claim the parent wanted custody of the minors: (1) the parent's failure to comply with a drug rehabilitation program; (2) her failure to appear at the selection and implementation hearing; and (3) her failure to visit the children for a two-and-one-half-month period from the end of February 1993 to mid-May 1993. (*Id.* at pp. 1043 & 1041.)

In this case, the father's waiver at the 12-month review, over the objection of his counsel, of his right to further reunification services, and his failure to appear at the February 3 hearing also belie the supposed desire to preserve parental rights. The unexplained and unexcused failure to appear for the hearing *by itself* belies such a desire. If, after due notice, a parent does not appear for a crucial hearing and there is no suggestion of inability to do so, there is no basis for third parties—such as appointed counsel or a court—to *impute* consent for a writ petition.

The court's order that Guillermo have visitation one hour every two weeks while he was incarcerated does not compel a different conclusion and it does not suggest a continuing interest in parental rights. Similarly, Guillermo's alleged "positive relationship" with the children and his statement to a social worker that he "eventually" hoped to regain custody of the minors show no implied authorization to file the instant writ proceeding. There is nothing inconsistent between a mere "positive relationship" and the lack of a desire to assert *parental* rights. And the mere wistful hope to "eventually" regain custody of one's children, without more, is simply too nebulous to demonstrate any real commitment to the assertion of parental rights in the face of actions to the contrary. Since the public defender did not obtain father's consent to file the petition, we must determine whether such consent is necessary.

Prior to this year, decisions of juvenile courts to terminate reunification services and set selection and implementation hearings were appealable. (*In re Matthew C.* (1993) 6 Cal.4th 386 [24 Cal.Rptr.2d 765, 862 P.2d 765].) The Legislature then rewrote subdivision (*l*) of section 366.26 to make it clear that an order to set a selection and implementation hearing was *not*

appealable unless a writ petition challenging the order was filed in a timely matter. (Stats. 1994, ch. 1007, § 2.) Moreover, an appeal is only available if the appellate court summarily denies the petition or otherwise does not decide it on the merits. (§ 366.26, subd. (*l*)(1)(C) and (*l*)(2).) Further, appellate courts are encouraged to determine "all" these new writ petitions on their merits. (§ 366.26, subd. (*l*)(4)(B).) The Legislature has declared that the intent of the recent change is to ensure a "substantive and meritorious" review in the Court of Appeal of the determination. (See § 366.26, subd. (*l*)(4)(A).) These petitions for extraordinary writs for relief from orders setting selection and implementation hearings function like interlocutory appeals. Review on the merits is all but a matter of right.

The logic of *Alma B.* therefore applies to the new writ procedures as it does to appeals. Because the new writs function as appeals, there is no reason to treat them any differently in terms of the need to obtain client consent for them. The effect of taking the writ—to challenge an order setting a ".26" hearing—and the grounds are the same. In this case, for example, public defenders challenge the substantial evidence supporting a finding that reasonable reunification services were offered. Such challenges have appeared frequently in appeals from orders terminating parental rights. The main difference in the new writ procedure is that appellate courts will now hear these challenges sooner.

■ Finally, we turn to the "exception" to the rule that the decision to appeal is the client's, not the attorney's—Penal Code section 1240.1, subdivision (b). This statute authorizes appointed counsel for indigent defendants in "any criminal, juvenile court, or civil commitment case" to file on the client's "behalf" a timely notice of appeal in one of two situations: (1) when the *attorney* is of the opinion that "arguably meritorious grounds exist for a reversal or modification" and where, in the attorney's judgment, the attorney deems it to be "in the defendant's interest to pursue such relief" or, (2) "when directed to do so by a defendant having a right to appeal." The internal structure of the statute clearly contemplates situations where appointed counsel in certain cases will be under a duty to file notices of appeal *without* first obtaining client consent. If actual consent were required in every case, the words "or when directed to do so by a defendant" would be surplusage. The impact of section 1240.1 on juvenile dependency appeals was not addressed by the court in *Alma B.*

Despite its nominal application to "any . . . juvenile court . . . case," we conclude that Penal Code section 1240.1 was never designed to apply to juvenile *dependency*—as distinct from juvenile *delinquency*—proceedings. It would be highly anomalous for the Legislature to delineate the duties of

appointed counsel regarding appeals in civil dependency proceedings right in the middle of the Penal Code. The logical place would be in the Welfare and Institutions Code, which governs the appointment of counsel for indigent parents. Juvenile dependency cases, as our Supreme Court has noted, are " 'civil in nature, designed not to prosecute a parent, but to protect the child.' " (*In re Malinda S.* (1990) 51 Cal.3d 368, 384 [272 Cal.Rptr. 787, 795 P.2d 1244].) References in Penal Code section 1240.1 to competency of counsel and to "civil commitment" attest to an obvious focus on involuntary incarceration. Such incarceration is a possible outcome of criminal, civil commitment, and juvenile court *delinquency* proceedings under Welfare and Institutions Code section 602 et seq. It is not a possibility in juvenile court *dependency* proceedings under section 300 et seq. of that code, where parents face no chance of incarceration.

The rule for the new juvenile writs is the same as for appeals. Because Guillermo's lawyers have not obtained his actual consent to take this writ petition and there is evidence which belies his continued assertion of parental rights, we dismiss the petition.

Sonenshine, J., and Wallin, J., concurred.

Petitioner's application for review by the Supreme Court was denied June 1, 1995.