[No. B108455. Second Dist., Div. Seven. Apr. 21, 1997.]

SUE E. et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Real Party in Interest.

**COUNSEL**

Hans F. Berg and Robert W. Ridgley for Petitioners.

No appearance for Respondent.

De Witt W. Clinton, County Counsel, Joe Ben Hudgens, Principal Deputy County Counsel, Auxiliary Legal Services and Lois Timnick for Real Party in Interest.

**OPINION**

WOODS, J.—Petitioner Sue E. is the mother of Angela W., a dependent child of the juvenile court. Petitioner Jay W. is Angela's father. By separate petitions for writs of mandate, Sue and Jay challenge the juvenile court's order of January 6, 1997, setting a hearing under Welfare and Institutions Code section 366.26[1] for the selection and implementation of a permanent plan for Angela, with the possibility of termination of the parental relationship. Petitioners challenge the juvenile court's findings (1) reasonable reunification services were provided to them by real party (the Department), and (2) there would be a substantial risk of detriment to Angela's physical or emotional well-being if she were returned to petitioners. Both petitioners further assert their petitions are filed, "regardless of the presence or absence of (perceived) meritorious issues," in order to preserve petitioners' right to appeal from any irregularities which may occur during the selection and implementation hearing (§ 366.26) which has been set for May 8, 1997. We will deny the petitions, as there is substantial evidence in the record to support the juvenile court's findings challenged by petitioners. We will also address the question whether a party must file a writ petition challenging the juvenile court's decision to set a section 366.26 hearing in order to preserve the right to appeal from matters which may later occur during, or in connection with, the section 366.26 hearing. We will conclude no such filing is required.

---

[1]All statutory references are to the Welfare and Institutions Code.

## FACTS

The record discloses petitioners Sue and Jay first came to the attention of children's protection services (CPS) in Albuquerque, New Mexico in July of 1993, after petitioners repeatedly missed appointments to take their 10-month-old daughter Starla, who suffered from a club-foot condition, to an orthopedic surgeon. In April 1994 CPS, which had begun to assist Sue and Jay with a multitude of problems within the family, investigated the death of Starla's four-month-old sibling, Stephanie, and determined Stephanie died of salmonella poisoning probably contracted from eating rotten food given her by petitioners. In the summer of 1994, Sue and Jay having failed to comply with the family preservation plan prepared by CPS and with Starla's detention imminent, they left New Mexico and travelled to Lancaster, California, where they immediately came to the attention of the Department. A section 300 petition filed by the Department in July 1994 alleged Starla was severely neglected. Starla was ordered detained, and in its subsequent investigation of the family history in New Mexico the Department learned the following: CPS had provided intensive services, with daily visits, to assist the family in addressing its serious problems. Sue suffered from developmental delays and possible mental retardation. Jay abused drugs and alcohol. Their home was in a filthy condition, with overflowing trash cans, rotten food everywhere, animal feces scattered on the floors, narcotics and drug paraphernalia in plain view, and roaches roaming through the home freely. After five weeks of family preservation services CPS determined Starla's detention was necessary in view of the perceived danger to her physical and mental health, and it was at this time that Jay and Sue left New Mexico for California.

As of October 1994 Sue and Jay were living in Lancaster in a disheveled truck, and they had failed to enroll in any of the programs which had been offered to them by the Department, which included individual counseling tailored to petitioners' special needs, especially in view of Sue's inability to read or to grasp concepts and the recent death of Stephanie. Reports prepared by the Department after Starla was declared a dependent of the court confirmed Sue's functional illiteracy, her denial of responsibility for Stephanie's death or for the filthy condition of her living quarters, and her lack of capacity to bond with or care for a young child. The Department's reunification services included regular home visits, referrals for treatment and counseling, referrals for parenting programs, a referral to a program to help Sue learn to read, and monitored visitation. Petitioners made little progress however in complying with the court-ordered programs. They failed to complete parenting classes, Sue was incarcerated for a brief period, they changed their address without notifying the Department, and they showed no improvement in parenting skills.

In June 1995 Angela was born, and five days after her birth the Department filed a petition seeking to have Angela declared a dependent of the juvenile court (§ 300). As sustained by the juvenile court, the petition contained the findings petitioners had failed to keep medical appointments for Starla; petitioners had failed to use orthotic braces Starla was medically required to wear; petitioners had maintained unsanitary living conditions which caused Stephanie's death from salmonella poisoning; and Angela was therefore at risk of serious harm. At disposition, the juvenile court ordered petitioners to undergo psychotherapy and nutrition counseling, ordered Sue to complete a remedial reading program, and allowed petitioners monitored visitation with Angela three times a week.

The following evidence was before the juvenile court at the hearing conducted January 6, 1997, pursuant to section 366.22: Petitioners were offered 51 opportunities to exercise monitored visitation with Angela during the pendency of the dependency case. Sue had visited Angela eight times, and Sue testified that during these visits Angela would "cry . . . but she will come to me once in a great while." Jay visited Angela only four times. The Department's social worker referred petitioners for psychotherapy to various agencies which accepted Medi-Care, and although petitioners attended one initial consultation at one agency, they failed to schedule or attend any further sessions, nor did they contact any of the other agencies. In her testimony at the hearing, Sue stated she did not participate in psychotherapy because it would cost $11 per month (for her and Jay combined), further testifying she and Jay had a monthly income of about $1,000 per month (all from welfare benefits). Sue had also failed to enroll in a remedial reading program as ordered by the court, in her words because she is "kind of stubborn" and does not like to have people "telling me I have to do this and I have to do that." Sue further testified she and Jay currently live in a 15-foot square hotel room, sharing a common bathroom with other occupants of the hotel. The Department's case plan, which was received into evidence by the court, included a three-page detailed schedule of its profuse reunification efforts on behalf of petitioners.

## DISCUSSION

As set forth above, the record contains ample evidence to support the juvenile court's findings and its order to conduct a hearing pursuant to section 366.26. (*In re Shaundra L.* (1995) 33 Cal.App.4th 303, 316 [39 Cal.Rptr.2d 299].) The record discloses the reunification efforts offered to petitioners were sufficient, and further shows it was petitioners who lacked the initiative to take advantage of those services during the entire period they were offered. (*In re Christina L.* (1992) 3 Cal.App.4th 404, 416-418 [4

Cal.Rptr.2d 680]; *In re Misako R.* (1991) 2 Cal.App.4th 538, 545-547 [3 Cal.Rptr.2d 217]; *In re Laura F.* (1983) 33 Cal.3d 826, 838-839 [191 Cal.Rptr. 464, 662 P.2d 922].)

Nor do we have any difficulty concluding, on the basis of the record, substantial evidence supported the juvenile court's finding it would be detrimental to return Angela to petitioners' custody. (See *In re John V.* (1992) 5 Cal.App.4th 1201, 1212 [7 Cal.Rptr.2d 629].) Petitioners' failure to participate in the court-ordered treatment programs alone constitutes prima facie evidence, pursuant to subdivision (a) of section 366.22, that return of Angela to petitioners would be detrimental. In view of petitioners' past neglect of Angela's siblings; their failure to avail themselves of the multiple services offered to them by the Department; their current inadequate living environment; and their lack of motivation to correct the behavior which led to Angela's dependency, petitioners demonstrate an inability to care for Angela without detriment to her physical and emotional well-being.

▆▆ We now turn to the assertion, made by both petitioners, the instant filings are "protective" in nature, that is, the petitions were filed not so much because of any merit in petitioners' objections to the juvenile court's order setting the section 366.26 hearing, but rather to preserve petitioners' appellate rights "post-366.26 WIC hearing." As we will explain, petitioners' concern is unfounded, as failure to file a writ petition challenging an order setting a section 366.26 hearing does not affect the right to appeal matters arising at the section 366.26 hearing itself. ▆▆ And, we remind counsel that where, as in this case, the record clearly shows the reunification services were sufficient and return of a child to the parents would be detrimental, counsel is not required to file a writ petition in providing adequate representation to a parent. (See *Cresse S.* v. *Superior Court* (1996) 50 Cal.App.4th 947 [58 Cal.Rptr.2d 56].)

▆▆ Petitioners' concern arises from the language of subdivision (*l*)(2) of section 366.26: "Failure to file a petition for extraordinary writ review within the period specified by rule . . . shall preclude subsequent review by appeal of the findings and orders made *pursuant to this section.*" (Italics added.) In major part, the provisions of section 366.26 concern the conduct of proceedings at which the juvenile court will select one of several permanency planning alternatives, which include guardianship and adoption and may permanently terminate parental rights. A literal reading of subdivision (*l*)(2) of section 366.26 is thus susceptible to the interpretation a parent must petition for an extraordinary writ prior to a section 366.26 hearing, or will otherwise be denied subsequent review by appeal of any irregularities which may occur during, or in connection with, the section 366.26 hearing. Petitioners—or, better said, their respective counsel—thus fear, based on the

imprecise wording of the statute, failure to file writ petitions challenging the order setting the section 366.26 hearing may deprive petitioners of the right to appeal from any prejudicial irregularities which may later occur during, or in connection with, the section 366.26 hearing.

Subdivision (*l*)(2) of section 366.26 should not be construed as feared by petitioners. Rather, the statute is properly construed as precluding subsequent review on appeal only of *the decision to set* a section 366.26 hearing, unless a writ petition challenging the order setting such hearing is timely filed. This interpretation of the statute is reflected in rule 39.1B(e) of the California Rules of Court, which was adopted by the Judicial Council as mandated by section 366.26, in order to achieve a substantive and meritorious review by the Court of Appeal of orders setting a hearing pursuant to section 366.26 within the 120-day period specified in sections 361.5, 366.21, and 366.22 for the commencement of a section 366.26 hearing, and to encourage and assist the Court of Appeal to determine on the merits all writ petitions filed to challenge "the findings and orders of the juvenile court in setting a hearing under section 366.26." (Cal. Rules of Court, rule 39.1B(a).) Rule 39.1B(e) expressly provides: "Failure by a party to file a petition for extraordinary writ review as specified in this rule shall preclude that party from obtaining subsequent review on appeal of the findings and orders by a juvenile court *in setting a hearing under section 366.26.*" (Italics added.)

It is thus clear failure to file a petition for extraordinary writ review pursuant to subdivision (*l*) of section 366.26 and California Rules of Court, rule 39.1B precludes subsequent appellate review only of matters embraced in the juvenile court's order setting a hearing under section 366.26. Failure to file a writ petition pursuant to rule 39.1B does not affect appellate rights with respect to any matters which may arise after the section 366.26 hearing has been set, including matters arising during the section 366.26 hearing itself.

The foregoing interpretation of section 366.26 subdivision (*l*) is also reflected in the reported appellate decisions. In *Ronald S.* v. *Superior Court* (1995) 34 Cal.App.4th 1467 [41 Cal.Rptr.2d 139] the court explained, "Prior to the amendment of subdivision (*l*) of section 366.26, the decision to set a section 366.26 hearing could be reviewed on appeal from the final order made at the section 366.26 hearing. [Citation.] Subdivision (*l*) now provides that *the decision to set a section 366.26 hearing* may not be raised on appeal unless a writ petition challenging the order was filed in a timely manner." (*Id.* at pp. 1468-1469, italics added; see also *Guillermo G.* v. *Superior Court* (1995) 33 Cal.App.4th 1168, 1172-1173 [39 Cal.Rptr.2d 748].)

Finally, to construe section 366.26, subdivision (*l*)(2) as feared by petitioners would lead to absurd and unconstitutional results, and would thus

violate settled rules of statutory construction. (See, e.g., *People* v. *Pieters* (1991) 52 Cal.3d 894, 898-899 [276 Cal.Rptr. 918, 802 P.2d 420]; *People* v. *King* (1993) 5 Cal.4th 59, 69 [19 Cal.Rptr.2d 233, 851 P.2d 27]; *Department of Corrections* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 197, 207 [152 Cal.Rptr. 345, 589 P.2d 853].) Our construction of the statute is thus the only rational and proper interpretation of the legislative intent. (See *Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 305 [138 Cal.Rptr. 53, 562 P.2d 1302].)

### DISPOSITION

Because substantial evidence supports the juvenile court's determination to hold the hearing described in section 366.26, the petitions are denied on the merits.

Lillie, P. J., and Johnson, J., concurred.