[No. G027222. Fourth Dist., Div. Three. Jan. 31, 2001.]

In re STEVEN H., a Person Coming Under the Juvenile Court Law.
ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
JULIE M., Defendant and Appellant.

**COUNSEL**

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Laurence M. Watson, County Counsel, and Ward Brady, Deputy County Counsel, for Plaintiff and Respondent.

Harry Zimmerman, under appointment by the Court of Appeal, for Minor.

**OPINION**

**SILLS, P. J.**—This appeal is from a judgment terminating the parental rights of Julie M. to her son Steven H. The appeal asserts the judgment must be reversed because the Orange County Social Services Agency (SSA) failed to comply with the requirement of Welfare and Institutions Code section 366.23, subdivision (b)(5)(B),[1] that notice of the termination hearing be served on Steven's grandparents. We issued an order indicating we were considering dismissing the appeal on our own motion, on the ground that Julie herself had not authorized it. Julie's counsel filed opposition, arguing that the requirement appellant personally authorize an appeal did not apply where, as here, the appellant is a minor. Counsel also contended that dismissal of the appeal for lack of authorization was improper where the basis of the appeal is lack of proper notice to appellant in the trial court.[2]

---

[1] All further statutory references will be to the Welfare and Institutions Code, unless otherwise indicated.

[2] SSA also filed its own motion to dismiss, arguing that Julie lacks standing to object to the lack of notice given to Steven's grandparents. We also ordered that that motion would be determined in conjunction with the merits. However, because the motion is largely duplicative of the argument contained in the respondent's brief, it need not be addressed separately.

We determined that the motion to dismiss would be resolved in conjunction with the merits of the appeal. Now, having considered counsel's arguments in light of the facts contained in the record, we conclude that dismissal of the appeal is inappropriate. We further conclude that the requirement of notice to the grandparents is intended, at least in part, as an attempt to deliver notice to the absent parent. Under those circumstances, Julie has standing to raise the issue, and the failure to give required notice to the grandparents warrants reversal of the judgment.

Julie gave birth to Steven in May 1997, when she was barely 13 years old and attending junior high school. On November 6, 1997, a petition was filed alleging that Steven came within section 300 because Julie herself had been detained "due to medical neglect by her mother and her mother's failure to comply with [her] service plan." On January 7, 1998, Steven was adjudicated a dependent, but custody was vested with Julie under a plan of family maintenance.

Julie initially did well with Steven. In fact, the initial report for the six-month review hearing recommended termination of his dependency. The social worker noted that while Julie was young, she was willing to learn. Moreover, the fact that Julie herself remained a dependent meant that her care of Steven would remain supervised, regardless of Steven's own dependency status.

However, the social worker changed her recommendation in an updated report. Julie had reportedly stated she wanted Steven to spend weekends with her mother, and was planning on having him live with her sister once the case was closed. Based upon those facts, the social worker recommended continued supervision. The court adopted the social worker's recommendation and set the case for a further review in December 1998.

The SSA report filed in December 1998 stated that Steven remained with Julie in a foster home in Fontana. Julie had improved her parenting skills and was asking for additional parenting classes. Julie also participated in weekly counseling classes and was reported to be enthusiastic about them. She demonstrated an understanding of her responsibilities through her daily care of Steven. The social worker reported that Julie felt very comfortable being a mother and did not feel her youth was a hinderance. The parties stipulated to continued dependency and the court set another review hearing for May 1999.

Unfortunately, the situation began deteriorating after that. In February 1999, SSA filed a subsequent petition pursuant to section 342, alleging Steven came within the provisions of section 300, subdivisions (a) and (b) because it was alleged Julie had spanked or hit him on the hand and the back, leaving a hand print on at least one occasion. Additionally, Julie herself was removed from her foster care and placed at Orangewood, because her foster mother had been "mean" to the foster girls and had reportedly hit Steven. Julie denied ever hitting Steven, reporting she used time-outs to discipline him. Shortly after the move, Julie's caretaker reported, "I'm amazed at how well Julie parents Steven, especially due to her young teen age of only 14." It was also reported that Steven was somewhat aggressive with Julie, and had a "habit of hitting," but that Julie was never seen to hit back.

The court ordered Steven detained under the subsequent petition, setting a hearing for March 16, 1999. The social worker's report noted that Julie was then requesting placement of both herself and Steven with her mother, LaDonna C. She also wanted to become emancipated so she could get a full-time job and support Steven. At the March hearing, Julie entered a plea of nolo contendere to count 3 of the petition, which was based upon the fact that Julie herself had been placed at Orangewood. Counts 1 and 2, alleging failure to protect, were dismissed.

In April 1999, SSA filed a supplemental petition pursuant to section 387. Julie, then placed at the Florence Crittenton Home, was threatening to run away because she was not allowed to have visits with a nonrelated male who was significantly older, or to attend "skin head" group meetings. Additionally, she had threatened to kill herself. At Julie's request, Steven was taken into protective custody at Orangewood, because she felt she could not care for him. Julie was considering relinquishing her parental rights.

On April 23, 1999, the court ordered Steven detained on the supplemental petition, set a hearing for May 14, and ordered unmonitored visitation for Julie. However, Julie left her placement on May 1, 1999, and her whereabouts were unknown. Although Julie was aware of the May 14 hearing, she did not appear, and the hearing was continued several times. In the interim, the social worker contacted Julie's mother, LaDonna, to arrange visitation with Steven. LaDonna stated she did not know Julie's whereabouts, but was aware that Julie had tried to reach her by phone.

On June 1, 1999, Julie telephoned the social worker, and informed her she was residing out of state. She did not give an address or telephone number. Julie also stated she was planning to attend the next hearing.

On June 11, the hearing proceeded without Julie. The court found the allegations of the supplemental petition to be true as amended and ordered custody taken away from Julie and vested with SSA. The court ordered a six-month review hearing for November 1999, telling Julie's counsel to notify Julie "if you're able to find her."

Julie visited Steven on September 8, 1999. In October, she reportedly contacted a foster family agency worker and stated she wanted Steven's foster family, with whom he had been placed since June, to adopt him. Julie was advised to contact the social worker about adoption, but she did not do so. Instead, when Julie contacted the social worker on November 10, she stated she could not decide what to do. She wanted Steven back, but was aware she had been making very bad decisions. She stated she was planning to turn herself in. Julie contacted the social worker again on November 15. She was unsure if she could make it to the scheduled hearing, as she was in Arizona. She refused an offer of transportation back to California. She also stated she was willing to have Steven's foster family adopt him if they would agree to allow her to have pictures at least once per year.

SSA recommended termination of reunification services at the six-month review hearing scheduled for November 19, 1999. At that hearing, the court set the matter for a contested hearing, which took place on December 20, 1999. At the December hearing, Julie's counsel requested a continuance because she did not yet know Julie's wishes. The request was denied. The court then made a finding that reasonable services had been provided, ordered services terminated, and set the case for a section 366.26 hearing. The court also specifically found that SSA had used due diligence to locate Julie, and ordered she be given notice of the section 366.26 hearing through counsel.

Julie was given notice of the section 366.26 hearing by publication. There is no evidence Julie was actually aware of the hearing; her counsel stated she had not spoken to Julie since the middle of September. Counsel objected to the hearing on the basis that notice had not been given in accordance with the requirements of section 366.23, subdivision (b)(5)(B). Specifically, she contended that notice had not been given through counsel, and more importantly, that no notice had been given to Steven's grandparents as required by the statute.

The court overruled the objection and proceeded to terminate parental rights. Julie's counsel then filed notice of appeal on her behalf, candidly acknowledging that Julie had not directed her to file the appeal.[3]

## I

We must first address the motion to dismiss the appeal. The record demonstrates Julie disappeared and terminated contact with her counsel prior to the section 366.26 hearing. Moreover, counsel specifically acknowledged in the notice of appeal that Julie "has not directed me to file this appeal." ■ The general rule is that an "attorney cannot appeal without the client's consent[; thus] a notice of appeal shown to have been signed by an unauthorized attorney is ineffectual in preserving the right to appeal." (*In re Alma B.* (1994) 21 Cal.App.4th 1037, 1043 [26 Cal.Rptr.2d 592].) This court has twice published opinions enforcing that rule. (See *Suzanne J. v. Superior Court* (1996) 46 Cal.App.4th 785 [54 Cal.Rptr.2d 25] and *Guillermo G. v. Superior Court* (1995) 33 Cal.App.4th 1168, 1174 [39 Cal.Rptr.2d 748].) Based upon that precedent, we issued the order stating we were considering dismissing this appeal on our own motion.

Julie's counsel, while acknowledging the general rule, makes two arguments as to why dismissal would be inappropriate in this case. ■ First, counsel contends that an appellant who is a minor need not personally authorize an appeal. Instead, it is asserted that counsel for a minor in a dependency matter acts like a guardian ad litem, and that, as a general rule, it is the counsel, rather than the minor herself, who should make all decisions concerning appeals. We reject that argument in the context of an appeal on behalf of a minor mother from a judgment terminating her parental rights.

It is generally true, as counsel suggests, that minors cannot enforce their rights in a legal proceeding unless they proceed through a guardian ad litem. (Fam. Code, § 6601.) It is also true that where a minor's separate interests need to be protected in a dependency proceeding, the court must appoint counsel to represent them. (Welf. & Inst. Code, § 317, subd. (c).) However, that is as far as we can go with Julie's counsel on this issue.

First, we do not agree that counsel appointed to represent a minor in a dependency matter is always obligated to pursue an appeal. That suggestion

---

[3]Counsel utilized a form notice of appeal incorporating language consistent with Penal Code section 1240.1, which specifically allows appeals without client authorization in particular circumstances.

is based upon an artfully excerpted phrase in section 317, subdivision (d), to the effect that counsel shall represent the minor "at all subsequent proceedings . . . unless relieved by the court . . . ." But read in context, what that passage really says is that appointed counsel must continue "at all subsequent proceedings *before the juvenile court.*" (Italics added.) Thus, when considered more fully, section 317, subdivision (d) does not require that counsel appointed for a minor continue with proceedings before the appellate court.

Second, and more specific to the circumstances of this case, we cannot accept counsel's implicit contention that under California law, a minor is considered less competent than an adult to make a decision about abandoning her fight to retain parental rights. And that is the crux of counsel's argument. He is asserting that while an adult client has the final say on whether an appeal from a judgment terminating her parental rights should be pursued, a minor client who chooses to abandon that fight can be overruled by her counsel. We cannot find any support for that contention. To the contrary, under California law, minors have the absolute authority to make decisions concerning their parental rights, including the right to relinquish those rights, without any requirement of approval by the minor's parent, guardian, or the court. (See Fam. Code, §§ 8700, subd. (b), 8814, subd. (d), 9003, subd. (d) [each specifying that minor parents have the right to consent to the adoption of their own children in various contexts]; see also *American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307 [66 Cal.Rptr.2d 210, 940 P.2d 797] [confirming the right of minors to obtain abortions without first securing parental consent or court authorization].)

Because Julie, even as a minor, has the same right as an adult to decide whether she wants to either continue fighting to retain her parental rights or abandon the effort, the mere fact of her minority status did not give her counsel the right to pursue an appeal without her authorization. Thus, we reject that argument.

■ Counsel's second argument, however, is more persuasive. Stated simply, counsel contends that where, as here, the very basis of the appeal is that the client did not receive proper notice of the action to be taken against her in the trial court, and there is no evidence she was even *aware* of what did take place, she cannot be expected, let alone required, to personally authorize an appeal. We agree.

None of the cases cited above, requiring the client's personal authorization for appeal, involve any contention that the client was not properly notified of

the actions taken in the trial court proceedings. Fundamental notions of due process require that proper notice be given, particularly where, as here, parental rights are at issue. As this court has recently reiterated, "Parents have a fundamental and compelling interest in the companionship, care, custody, and management of their children. . . . '[T]he state also has an urgent interest in child welfare and shares the parent's interest in an accurate and just decision. . . .' . . . To ensure that result, '[u]ntil parental rights have been terminated, both parents must be given notice at each step of the proceedings. . . .' . . . The notice must comport with due process." (*In re DeJohn B.* (2000) 84 Cal.App.4th 100, 106 [100 Cal.Rptr.2d 649], citations omitted.)

If we were to hold that access to the appellate courts required appellants to personally protest trial court proceedings of which they have not been properly notified and of which they are actually unaware, it would seemingly be a "Catch 22."[4] On the one hand, if an appellant is actually made aware of what is going on in the trial court, any technical error in notice is likely to be harmless and provide no grounds for appeal (see *In re Amy M.* (1991) 232 Cal.App.3d 849, 868-869 [283 Cal.Rptr. 788]); on the other hand, if appellant is not notified or made aware of what is going on, there are likely grounds for appeal, but no opportunity to pursue it. Such circular logic not only may cause injustice in particular cases, it tends to undermine public confidence in the judicial system.

Consequently, we hold that when an appeal is based upon the contention appellant did not receive proper notice of the trial court proceedings, and the record contains no evidence that appellant was actually made aware of what occurred within the time limit for filing the appeal, there is no requirement that appellant personally authorize the appeal. Instead, the right to appeal may be preserved by a notice filed by counsel.[5] We therefore conclude that dismissal of the appeal in this case is unwarranted.

## II

We now turn to the merits. Section 366.23, subdivision (b)(5)(B) specifies the type of notice required to be given when a section 366.26 hearing is scheduled which might result in termination of parental rights, and the parent cannot be located. It provides, in pertinent part: "If the court determines that there has been due diligence in attempting to locate and

---

[4]Heller, Catch 22 (1961).

[5]We do not, however, hold that counsel has any duty to pursue such an appeal for a client who has not specifically requested or authorized it.

serve the parent and the petitioner does not limit the recommendation to legal guardianship or long-term foster care, the court shall order that service to the parent be by certified mail, return receipt requested, to the parent's counsel of record, if any. If the parent does not have counsel of record, the court shall order that the service be made by publication . . . . *In any case where service to the parent by certified mail on the counsel of record or publication is ordered, the court shall also order that notice be given to the grandparents of the minor, if there are any and if their residences and relationships to the minor are known,* by first-class mail of the time and place of the proceedings and that they may appear." (Italics added.)

In this case, the statute required that notice of the hearing be given to Julie's counsel by certified mail, and to the grandparents of Steven. However as Julie's counsel points out, neither of those things was done. Instead, Julie was served by publication. It is conceded that the failure to serve the notice on counsel was harmless error. It is beyond dispute that Julie's counsel was aware of the hearing, and that certified notice would not have achieved any additional benefit in this case. Thus, Julie's appeal hinges on the failure to give the required notice to the grandparents.

SSA acknowledges there is no evidence that it notified Steven's grandparents of the section 366.26 hearing. Instead, it argues that Julie has no standing to complain about lack of notice to the grandparents, citing *In re Gary P.* (1995) 40 Cal.App.4th 875 [46 Cal.Rptr.2d 929], among other cases. SSA contends that notification to the grandparents is entirely to protect their own rights, and has nothing to do with preserving Julie's rights.

By contrast, Julie's counsel contends that the required notification to grandparents is intended, at least in part, to facilitate notice to the absent parent, as the grandparents may have resources for locating the parents that are unavailable to SSA. Neither party can cite any authority for their interpretation of the statute, and we have found none. However, "[t]he interpretation and application of a statutory scheme is a question of law which is subject to de novo review on appeal." (*Orange County Employees Assn. v. County of Orange* (1991) 234 Cal.App.3d 833, 840 [285 Cal.Rptr. 799].)

We agree with Julie's counsel. We think it significant that grandparent notification is required only when the parent cannot be located. If the purpose of the requirement were merely to give the grandparents an opportunity to preserve their own relationship with the child, then presumably the grandparents would be entitled to notice in every case, not only in situations

when the parents are gone. But that is not the case. Grandparent notification is only required when direct parental notification cannot be achieved.

Moreover, we reject SSA's contention that grandparent notification would not tend to promote notification to the missing parent. SSA argues that because it contacts relatives as part of its own diligent attempts to locate missing parents, it would already have established that the grandparents could not locate the parents by the time this issue arises. We do not agree. Sometimes family members, either out of loyalty to the missing parent, or distrust of the government agency, would not give information to SSA about how to locate the parent even if they had it. But those same relatives, if notified of a hearing to terminate parental rights, might be willing to pass that information on to the parent.

We conclude that the grandparent notification provision of section 366.23, subdivision (b)(5)(B) is intended, at least in part, as an attempt to get notice to the missing parent. Consequently, when that required notice is not given, the parent has standing to raise the issue on appeal.

SSA next contends that the failure to give grandparent notice in this case was harmless beyond a reasonable doubt. (See *In re Amy M., supra*, 232 Cal.App.3d at pp. 868-869.) Again we cannot agree. There was sufficient evidence that Julie had an ongoing relationship with her own mother, LaDonna. Even though LaDonna had reported to the social worker in June of 1999 that she did not know Julie's whereabouts, she also stated that Julie had telephoned her. Such telephone contact would have been a sufficient way for LaDonna to inform Julie of the critical progress in Steven's case. Moreover, as we noted above, the fact that LaDonna denied knowledge of Julie's whereabouts to the social worker did not necessarily mean she did not actually have the means to get in touch with her. We cannot say the failure to give notice to the grandparents, specifically LaDonna, was harmless beyond a reasonable doubt.

Finally, SSA contends, rather weakly, that it could not have given notice to LaDonna anyway, because she had reported back in March of 1999 that she was in the process of seeking suitable housing, and it did not have a current address for her. We find that hard to believe. There was no evidence that LaDonna actually did move, and the record reflects that SSA had numerous additional contacts with LaDonna over the ensuing several months.

The judgment is reversed and remanded to the juvenile court with directions to hold a new hearing pursuant to section 366.26, after proper notice under section 366.23, subdivision (b)(5)(B).

Crosby, J., and Bedsworth, J., concurred.