## E. V. HATHAWAY v. LEWIS BRADY, W. W. STOW, AND WM. H. PATTERSON.

PROCEEDINGS SUPPLEMENTARY TO EXECUTION.—Sections one hundred and forty-one, one hundred and forty-two, and one hundred and forty-three of the Practice Act, relating to proceedings supplementary to execution, do not authorize the Court to make an order for the application of property of the judgment debtor in the hands of a third party to the satisfaction of a judgment, upon the mere affidavit of the plaintiff, without first examining the party alleged to have the property in his possession as to the truth of the allegation. The order to apply the property to the satisfaction of the judgment must be based upon the answer of the person alleged to have it in his possession, and such other testimony as may be adduced at the hearing in connection with his answer. The affidavit of the plaintiff merely serves as the basis of a proceeding to acquire jurisdiction of a party who was before a stranger to the action.

MONEY DEPOSITED WITH SHERIFF TO RELEASE ATTACHED PROPERTY.—Where the defendant in an action, whose property had been attached by the Sheriff, deposited with the Sheriff a sum of money in gold coin, in lieu of an undertaking, to procure a release of the property, and the property was thereupon released, and afterwards, by agreement between the parties to the action, the money was taken from the Sheriff and loaned out pending the litigation, and a note drawing interest taken therefor payable to plaintiff's attorney—*held*, that after plaintiff recovered judgment, the persons who borrowed the money did not hold it in the character of bailees of the Sheriff, but that they were mere debtors, and the money in their hands a mere debt, to be treated as such on proceedings supplementary to execution.

JUDGMENTS PAYABLE IN COIN.—The two hundredth section of the Practice Act, as amended in 1863, making provision for the entry of judgments in certain cases, payable in a specific kind of money, confers a special authority on Courts not known to the common law, or Courts of equity, and must be strictly construed.

SAME—PROCEEDINGS SUPPLEMENTARY TO EXECUTION.—If, pending a litigation to recover a money judgment, gold coin of the defendant which is in the custody of the Sheriff, is, by consent of parties loaned out, and a note of the borrower is taken therefor, payable in gold coin, the Court cannot, after plaintiff recovers judgment, and while the note is outstanding in the hands of third parties, and not under the control of the Court, make an order, in proceedings supplementary to execution, that the borrower pay over the money in gold coin. The mode of enforcing a contract payable in coin is, under the statute, by an action or proceeding upon the contract itself.

JURISDICTION OF COURT IN PROCEEDINGS SUPPLEMENTARY TO EXECUTION.—In proceedings supplementary to execution the Court has no jurisdiction to make orders relating to persons who are not parties to the proceeding, nor has it power to make an order, that one who has, by consent of plaintiff and defendant, borrowed money, deposited with the Sheriff by defendant to release an attachment, and given his note to a third party therefor, payable when plaintiff recovers judgment, shall pay the money to the plaintiff, when the person who holds the note is not a party to the proceeding, and the note is still in his hands and not under the control of the Court.

RECEIVER IN PROCEEDINGS SUPPLEMENTARY TO EXECUTION.—In proceedings supplementary to execution, the Court has power, when it has all the parties before it, to appoint a receiver, and order a note in the hands of a third person, a party to the proceeding, and payable to the judgment debtor, or to such third person as trustee of the judgment debtor, to be delivered up to the receiver, to be collected by suit or otherwise under its direction, and the proceeds applied to the payment of the debt.

MONEY TAKEN BY CONSENT OF PARTIES FROM THE CUSTODY OF THE LAW.—Money deposited with the Sheriff by a defendant to procure the release of an attachment is in the custody of the law, but where the parties by a mutual agreement take it out of the hands of the Sheriff, without any order or permission of Court, and loan it out to third parties, these parties are not the bailees of the Sheriff, and the money ceases to be in the custody of the law, and can only be reached on proceedings supplementary to execution, in the same manner as other debts are reached.

APPEAL from the District Court, Third Judicial District, Alameda County.

The facts are stated in the opinion of the Court.

*Patterson, Wallace & Stow,* for Appellants.

The Court below erred in ordering Patterson & Stow to pay the funds in their hands in gold coin. The order should have been to pay the sum, leaving it to be complied with by the payment of any "lawful currency" which by law will discharge a debt or obligation.

Patterson & Stow made no contract with plaintiff. The judgment in *Hathaway* v. *Brady* is not payable in any specific currency; it may be discharged by the tender of United States Treasury notes.

To require the defendant in this judgment, or his trustees, Patterson & Stow, to pay in a specific currency, was not warranted by the judgment nor by any statute of this State. The execution only requires the collection of money; the proceedings supplementary to execution cannot require anything beyond what the judgment and execution required. The defendant might have paid the judgment in Treasury notes. The execution would have been satisfied by payment of legal tender notes.

The action of the Court below was based on the theory that Patterson & Stow, having received coin, must pay plaintiff coin—the premises being admitted, the conclusion does not follow:

1st. Because they made no contract with plaintiff.

2d. Because plaintiff's judgment was not payable in coin.

3d. Because the statute of this State providing that a contract made by its terms payable in coin, shall be enforced by a judgment payable in the same coin, contravenes the Act of Congress making legal tender notes, money, and the payment thereof at their nominal value a satisfaction of all debts.

It cannot be denied that Congress has the exclusive power to provide for the coinage of money, and to regulate the value thereof; nor can it be denied that Congress has made no legal difference between the value of greenbacks and gold—either is a lawful tender, by the legislation of Congress, for the payment of any or all debts. The one is money, and so is the other; the one bears the impress of sovereignty, and so does the other; the value of the one is regulated by the Government as much as the other. As money, there is no difference between them; as an article of merchandise, the one has a value greater than the other; but wheat, barley, lumber, a horse, bullocks, etc., are articles of merchandise, have a value, and market price.

But we are not without authority on this point. In the time of Queen Elizabeth, mixed or base money was coined by authority of the sovereign, who, by proclamation, ordered it to pass current. A person in Ireland had borrowed £100

sterling, and had given a bond to repay it on a certain future day. In the meantime, Elizabeth, for the purpose of paying her armies and creditors, had coined the base money. The debtor, on the appointed day, tendered £100 in this base coin, and it was determined, upon great consideration, that it was a legal tender, and that the lender was obliged to receive it. (Davies' Irish Reports, 48; see pp. 278, 208, Vol. 1, Book 1, Black. Com. note 33; 1 Hale, P. C. 194.)

Once admit that Congress can make the legal tender notes a lawful tender, and there is an end of the argument in support of the proposition that State legislation can determine they are not legal tenders for some debts and obligations, but are for others. If money for one purpose, they must be for all.

On the 25th day of February, 1862, Congress passed another Act, entitled "An Act to authorize the issue of United States notes, and for the redemption or funding thereof, and for funding the floating debt of the United States."

The first section of this law provides, among other things, that the Secretary of the Treasury is authorized to issue, on the credit of the United States, one hundred and fifty millions of dollars of United States notes, which notes, "shall be receivable in payment of all taxes, internal duties, excises, debts, and demands of every kind due to the United States, except duties upon imports, and of all claims and demands against the United States of every kind whatsoever, except for interest upon bonds and notes, which shall be paid in coin, and shall also *be lawful money and a legal tender in payment of all debts, public and private,* within the United States, except duties on imports and interest as aforesaid." (Statutes 1861–1862, p. 345.)

The law of 1862 neither repeals the Act of 1792, nor provides that the treasury notes issued under it shall be *exclusively* a lawful money or legal tender.

There are thus presented to the citizen two kinds of currency which he can use as a medium of exchange, or in which he can make his payments. They are both lawful money; neither, in the estimation of the law, superior to the other.

Where individuals enter into contracts which are to be cancelled by the payment of money generally, both of these Acts of Congress enter into and form a part of the contracts, and the cancellation can be accomplished by the tender of either class of currency.

The privilege is given the debtor to select either the gold or the paper, and discharge his obligation with the kind of money chosen. . In fact, the idea of a legal tender involves the idea of a privilege given to a debtor to pay his creditor without a concurrence by the latter, except a concurrence forced by the law.

If the right to pay a debt with an article stamped by the Government, and denominated money, be a privilege given the debtor, then the latter can waive that privilege. The privilege of the debtor is statutory, and it has been repeatedly held that a person can waive, not only a statutory, but even a constitutional right. (*Lee* v. *Tillotson*, 24 Wendell, 338 ; *Van Hook* v. *Whitlock*, 26 Wendell, 43 ; *People* v. *Murray*, 5 Hill, 468 ; *Baker* v. *Braman*, 6 Hill, 47 ; *Embury* v. *Connor*, 3 Comstock, 511 ; *Toombs* v. *Rochester R. R. Co.*, 18 Barbour, 583 ; *Buel* v. *Trustees Lockport*, 3 Comstock, 197.)

If he can choose at the time of payment, which of the two kinds of currency will satisfy his debt, why cannot he make the choice at the time he agrees to pay ? If at the time he proposes to pay, he tenders gold, and thereby waives his right to tender Treasury notes, why cannot he make the waiver in advance ?

*W. W. Crane, Jr.*, for Respondent.

The respondent claims that the law commonly called the Specific Contract Act, is not in conflict with any of the laws of Congress, but, on the contrary, is in perfect harmony therewith, and that it is competent for the Legislature of this State to authorize the enforcement of the payment of express contracts in the kind of currency expressed in the contract.

Congress, on the 2d of April, 1792, passed an Act entitled

74

"An Act establishing a mint and regulating the coins of the United States." (Statutes at Large, Vol. I, p. 250.) Section sixteen of this Act is as follows:

" That all gold and silver coins which shall have been struck at and issued from the said mint, shall be *a lawful tender in all payments whatsoever*, those of full weight according to the respective values hereinbefore declared, and those of less than full weight at values proportioned to their respective weights."

By the Court, SAWYER, J.

Hathaway sued Brady and attached certain personal and real property. For the purpose of releasing the personal property, Brady gave an undertaking, and deposited with Edmondson, the Sheriff, five thousand dollars in gold coin, and the personal property was thereupon released from the attachment. After judgment, and pending an appeal, Edmondson's term of office being about to expire, an arrangement was made by the parties interested, through their attorneys, that the five thousand dollars in gold coin should be withdrawn from the custody of Edmondson and placed in the hands of Stow, defendant's attorney, and one of the appellants, to be held by him as custodian, subject to all the rights of plaintiff in all respects the same as if it had remained in the hands of Edmondson. In pursuance of this arrangement, and on the joint order of the attorneys of the respective parties, the said coin was delivered by Edmondson to Stow. It was at the same time agreed, that the funds so received by Stow should be deposited or loaned, as the parties might agree. Afterward the plaintiff, through his attorney, proposed to Stow to take the money as a loan at a reasonable rate of interest, giving security for its repayment. This proposition being declined, it was finally agreed by the parties, on the 26th of August, 1863, that pending the litigation, said Stow and his partner, Patterson, should take twenty-five hundred dollars of the sum, and W. W. Crane, attorney for plaintiff, the remainder, and pay interest therefor at one and one fourth

per cent per month.   In pursuance of this arrangement, Patterson & Stow executed and delivered to Crane an instrument, as follows :

" [$2,500.]                      SAN FRANCISCO, August 26, 1863.

" One day after an entry of an order in the Supreme Court affirming judgment in Third District Court, Alameda County, · of *Hathaway* v. *Brady*, or if said judgment is not affirmed, one day after demand, without grace, we promise, for value received, to pay W. W. Crane, at our office in San Francisco, in United States gold coin of the present standard of fineness and value, two thousand five hundred dollars, with interest, payable in like coin, at one and one fourth per cent per month.
                                          " PATTERSON & STOW."
[United States Revenue Stamps.]

Stow paid over to Crane two thousand five hundred dollars, taking from Crane an instrument similar to that executed by Patterson & Stow.   Patterson & Stow also, at the same time, and as a part of the same transaction, executed a written acknowledgment, that they held the said five thousand dollars in coin " in the same manner, and with like effect as if the same continued in the hands of said Edmondson."

The judgment in the action having been subsequently affirmed, said Crane requested said Patterson to pay said sum of two thousand five hundred dollars, and Patterson refused. An execution was then issued, and the Sheriff of the City and County of San Francisco returned that he had attached " all moneys, goods, credits and effects, debts due or owing, or other personal property, in the possession of W. W. Stow and W. H. Patterson, and belonging to defendant," by delivering copy, etc. ; that statement was demanded and no answer given.

The money not having been obtained, said Crane, on behalf of plaintiff, made an affidavit in the cause of *Hathaway* v. *Brady*, setting forth substantially the foregoing facts, the issue and return of execution unsatisfied, and adding : " Deponent therefore avers that said Patterson & Stow have property,

to wit: The sum of two thousand five hundred dollars in United States gold coin of said Lewis Brady, and refuse to pay the same upon said execution or to apply the same to the satisfaction of said judgment." Upon this affidavit he asked and obtained an order upon Patterson & Stow, to show cause, why they should not pay over said two thousand five hundred dollars, with interest thereon at one and one fourth per cent per month in United States gold coin, and why they should not deliver up and cancel the said note for two thousand five hundred dollars given by Crane. At the hearing Patterson & Stow were not examined, but they resisted the application, and read in opposition a copy of the judgment and execution in *Hathaway* v. *Brady*, and other portions of the record, from which it appeared that the judgment was the ordinary money judgment, and not a judgment for coin, and that the execution followed the judgment. The Court ordered " that said W. H. Patterson and W. W. Stow do upon demand pay over to the plaintiff, or his attorney of record, the sum of two thousand five hundred dollars in United States gold coin, with interest thereon, payable in like gold coin, at one and one quarter per cent per month from the 26th day of August, 1863, and that upon the payment thereof, the said W. W. Crane, Jr., deliver to said Patterson & Stow their memorandum note aforesaid.held by him and said Patterson, and said Patterson & Stow deliver to said Crane his memorandum note aforesaid, upon the application of the two thousand five hundred dollars, with interest at one and one quarter per cent per month from said August 26, 1863, now in said Crane's hands, toward the payment of said judgment."

From this order Patterson, Stow and Brady appeal.

The appellants insist that the Court had no power to make said order or any part thereof; that said order is not authorized by law ; that said order is erroneous in ordering Patterson & Stow to pay said sum and interest in gold coin ; and that it is erroneous in directing said Patterson & Stow to surrender to Crane his note.

It is not clear from the record what the character of these

proceedings was intended to be. But the respondent's counsel, in his brief, claims that they were had under sections one hundred and forty-one, one hundred and forty-two and one hundred and forty-three of the Practice Act relating to proceedings supplementary to execution. But the provisions of those sections have not been pursued. There is nothing in those sections, that authorizes the Court to make an order for the application of property of the judgment debtor in the hands of a third party to the satisfaction of the judgment, without first ascertaining, by an examination of the party alleged to have the property in his possession, the truth of the allegation. When it is made to appear to the satisfaction of the Judge, that any person has the property of the judgment debtor, or is indebted to him in an amount exceeding fifty dollars, " the Judge may by an order require such person * * * to appear at a specified time and place before him, or a referee appointed by him, and answer concerning the same." He can be compelled to answer, but there is nothing authorizing the Court to make any order to pay till he has answered. In this case Patterson & Stow have never, so far as shown by the record, been examined, or answered, or admitted that there was anything in their hands due or belonging to Brady. They appeared to the order to show cause and opposed the application. But they were not called upon to answer whether they had any property of Brady or not, and did not answer. It appears by the record that the Court acted only upon the affidavit of Crane, made for the purpose of obtaining the order to show cause, and the execution introduced by him.

There was no admission by Patterson & Stow, that they had any money, or property of Brady's in their possession, and no answer by them. There was no evidence of the fact other than the moving papers referred to. The affidavit of Crane was, perhaps, sufficient to authorize the Judge to make an order requiring Patterson & Stow to appear and answer ; but it performs no other office than to serve as a basis to set the Court in motion. It is not a pleading like a complaint, to which the party summoned is to plead, and in default of pleading

thereto to be taken in the proceeding as true. No default can be entered upon it. It is simply the basis for the order for the purpose of acquiring jurisdiction of a party who was before a stranger to the case. The order to apply property to the satisfaction of the judgment must be based upon the answers of the party summoned, and such other testimony as may be adduced in connection with the answer. There was no examination of Patterson or Stow in this case, and neither answer or admission, with or without other testimony, upon which the Court could be authorized to enter the order. These statutory proceedings must be strictly pursued. The proceedings were, therefore, irregular.

But, for the purposes of this decision, we will assume that proceedings supplementary to execution were regularly had under the provisions of the Practice Act.

It is claimed by the respondents, that, Patterson & Stow were simply bailees of coin owned by Brady, holding it as a special deposit, and that the Court is authorized to order it to be delivered over in the same manner, as if it were any other specific piece of personal property capable of manual delivery. Conceding this to be the position of Patterson & Stow on the receipt of the money from Edmondson, such was clearly not their relation to it after the further arrangement of the 26th of August. The parties appear to have been unwilling that so large an amount of money should be idle pending a protracted litigation. They were anxious that it should draw interest. The plaintiff offered to take it upon interest and give security. The proposition was not acceded to. It was finally agreed that Patterson & Stow should take two thousand five hundred dollars, and Crane two thousand five hundred dollars, each to pay interest at one and a quarter per cent per month, and the instruments referred to in the record were executed in pursuance of this agreement. It was certainly not contemplated that Patterson & Stow should keep the coin in their safe, as a special deposit, after this arrangement. Admitting them to have been bailees before the 26th of August, this agreement converted them from mere bailees into debtors,

but without changing the rights of the plaintiff and defendant
as between themselves, so far as their interest in the fund was
concerned.  The fund from that time, at least, lost the char-
acter of specific personal property capable of manual delivery,
subject to be delivered over, as such, on the order of the Court,
and acquired the character of a debt, subject to be applied by
the Court on proceedings subsequent to execution, only in the
mode applicable to other debts.  The respondent and the
Court so treat the matter, for the respondent asks, and the
Court orders, that Patterson & Stow shall " pay over to plain-
tiff, or his attorney of record, the sum of two thousand five
hundred dollars in United States gold coin, with interest there-
on, payable in like gold coin, at one and one quarter per cent
per month, from the 26th day of August, 1863."  No interest
was deposited with Patterson & Stow.  The demand for inter-
est necessarily arose from the use of the money in the character
of debtors.  There was, then, no specific coin belonging to
Brady in the hands of Patterson & Stow, upon which the order
of the Court could operate.

But it is insisted, that, under section two hundred of the
Practice Act, as amended in 1863, the Court was authorized
to order Patterson & Stow to pay the amount due in gold
coin.  That section provides, that, "in an action on a contract
or obligation in writing for the direct payment of money,
made payable in a specified kind of money or currency, judg-
ment for the plaintiff, whether the same be by default or after
verdict, may follow the contract or obligation, and be made
payable in the kind of money or currency specified therein ;
and in an action against any person for the recovery of money
received by such person in a fiduciary capacity, or to the use
of another, judgment for the plaintiff, whether the same be by
default, or after verdict, may be made payable in the same
kind of money or currency so received by such person."

This section confers a special authority to enter a peculiar
judgment not known to the common law, or even to Courts of
equity in certain specified "*actions.*"  It must be strictly con-
strued and cannot be extended beyond the case prescribed.

The case under consideration is not one of the specified cases. It is true there was a contract in writing made by Patterson & Stow. But this is *not an action upon that contract.* The written contract is now outstanding in the hands of some person not a party to this suit, who himself holds it as trustee for the benefit of the parties interested. Had the action been brought on that instrument by him, as trustee, or by some person under the direction of the Court, the question would have arisen as to what power the Court could exercise under this provision of the statute. Nor is this " an action against a person for the recovery of money received by such person in a fiduciary capacity," within the meaning of the statute.

This is a summary proceeding in the nature of a garnishment, collateral to another action, in which the plaintiff seeks to charge Patterson & Stow as debtors of Brady, or as having property of Brady, the judgment debtor. It is not an action by the beneficiary in his own right against his trustee to recover money held by the trustee for his benefit, nor a proceeding to enforce his right to the fund under the stipulation withdrawing the money from the hands of Edmondson. It proceeds upon a different theory, and is not the case contemplated by the statute. The plaintiff chose to proceed under the statute relating to proceedings supplementary to execution, and charge Patterson & Stow as debtors of Brady for money loaned at interest, and he must be limited to the remedies afforded by those provisions. Such proceedings are only adapted to reaching funds of the judgment debtor. Any interest the plaintiff may have acquired against Patterson & Stow by virtue of his agreement with them must be enforced in some other mode.

Plaintiff's judgment against Brady, and the execution issued on it, do not call for gold coin. They may be satisfied by any other coin, or money which the Constitution and laws of the United States make a legal tender. It may be doubtful whether the plaintiff can acquire a right, by proceedings supplementary to execution, to a judgment or order more favor-

able to himself than he has against Brady. But if he can, it must be through an action directly upon the contract of Patterson & Stow, to enforce it according to its terms. But it is enough to say that this proceeding is not "an action," etc., within the meaning of the Act relied on, and the plaintiff can receive no aid from the statute. Conceding, therefore, the propriety, under the circumstances disclosed by the record, of making an order requiring Patterson & Stow to pay over the money due from them, the order was erroneous in requiring it to be paid in any specific kind of money. The Court was not authorized to make the order in this proceeding, upon the case presented by the record.

The order is erroneous in requiring Patterson & Stow to deliver up to Crane his note of August 26th, upon Crane's applying the two thousand five hundred dollars due from him on the instrument, in satisfaction of plaintiff's judgment. Crane was no party to this proceeding, and the Court had no jurisdiction to make the order. The note was not ordered to be delivered to him as receiver, but as maker.

The Court ought not to have made the order requiring Patterson & Stow to pay over the two thousand five hundred dollars, while their note was outstanding in the hands of a third party, and not under the control of the Court. The order, that Crane deliver up the note after Patterson & Stow should have complied with the order on their part, was a nullity, for the reason, that Crane was not a party, and the Court had no jurisdiction over him or the paper. Crane, in his affidavit made on behalf of plaintiff, avers a willingness to surrender the note on the payment to plaintiff of the money due on it; but this, without placing the note on the files or in the custody of the Court for that purpose, did not give the Court control of the instrument. The Court had power to appoint a receiver and direct Patterson & Stow to deliver the note of Crane to the receiver, to be collected by suit or otherwise under its direction, and the proceeds applied to the payment of the debt. So, also, it might have ordered Crane, in a proper proceeding against him, to deliver up the note of Patterson & Stow to be

collected in the same manner. But it had no authority to order either to deliver up the notes held by them respectively to the other, or to any other party having no such relations to the Court.

It is also insisted, that, under the stipulations set out in Crane's affidavit, Patterson & Stow stood in the position of the Sheriff, and could be required to pay over the money on motion, in the same manner as the Sheriff could be required to pay over, had the money remained in his hands. Whatever the rights of the parties in the money may have been, it does not follow that the remedy is the same that it would have been had the money remained with the Sheriff. In his hands it was in the custody of the law. But the parties, by mutual agreement, took it out of the hands of the Sheriff, and placed it in the hands of private parties. This was not done under an order, or by the permission, or under the sanction of the Court. The Court took no action whatever in the matter. Nor did the Sheriff, either on his own motion, or at the suggestion of the parties, appoint Patterson & Stow his keeper. They were not the bailees of the Sheriff, and were not in any manner accountable to him for the deposit. The parties interested, by a private arrangement between themselves, independent of any official action of the Court or Sheriff, took the money out of the custody of the law, thereby relieving the Sheriff from any further responsibility in the matter, and placed it in the hands of Patterson & Stow, who thus became trustees for the benefit of all the parties interested in the money—the plaintiff and defendant under the stipulation retaining the same pecuniary interest in the fund as if it had remained in the custody of the law ; and by a subsequent agreement the deposit was converted into a loan—the interest of the parties in the fund also remaining unchanged. But the remedies for making that interest available are necessarily different. The money is no longer in the custody of the officers of the law. It has been intrusted to private parties, and the remedies must be such as are applicable to other funds held in a similar manner upon like trusts.

Points decided.

From the views expressed, it follows that the order appealed from must be reversed, and it is so ordered.