Wright, J.
The first error assigned is upon a question of evidence. After the case was appealed, John H. Shaw, principal defendant, died, and his wife, Eliza A. Shaw, and others, were made parties, as “ devisees.” Walbridge, between whom and Shaw tile controversy was, being a witness, was asked what was said and done between himself and Shaw as regards the matter in dispute. This was objected to. If we understand the ground of the objection, it is, that Shaw being dead, Walbridge was an incompetent witness, Mrs. Shaw being a devisee of deceased. Section 313 of the code, as it was amended in 1871 (68 Ohio L. 127), was as follows: “No party to a civil action shall be allowed to testify by virtue of section 310, in any action where the adverse party is the guardian or trustee of a child or children of a deceased person, or if an idiot or a lunatic, or if a deaf and dumb person, or is the executor or administrator of a deceased person, or is a party claiming or defending as heir, grantee, or devisee of a deceased person, except,” etc. Under this section, of course, Mrs. Shaw, being a “ devisee of a deceased person,” Walbridge would be incompetent to testify against her. But the case before us was tried 15th April, 1874, and ten days earlier, April 13, 1874, the above law was repealed, and re-enacted, leaving out the words “ or is a party claiming or defending as heir, grantee, or devisee of a deceased person.” Walbridge, therefore, was a competent witness, and there was no error in admitting his evidence.
2. John TI. Shaw had conveyed to Walbridge the lots in question, by a deed, absolute upon its face, Walbridge *5 giving back a contract to reconvey on the payment of a certain sum. As is seen in Ms answer, ’Walbridge admits that the transaction was, in fact, a mortgage of the property, but he further asserts that there was a subsequent parol agreement, by which the contract to reconvey was canceled, and the equity of redemption actually sold by Shaw to himself. It is claimed by Shaw’s representatives, that a parol agreement to release an equity of redemption is insufficient under the statute of frauds, being an attempt to convey an interest in real estate without writing, and there are authorities to that effect. Brown on Stat. Erauds, §229 ; Marble v. Marble, 5 N. H. 374; Scott v. McFarland, 13 Mass. 309.
The better opinion is, however, the other way. Harrison v. Trustees of Phillips Academy, 12 Mass. 456; Trull v. Skinner, 17 Pick. 213; Falis v. Conway Mut. Fire Ins. Co., 7 Allen, 46 ; Green v. Butler, 26 Cal. 593; West v. Peed, 55 Ill. 242.
But it is not necessary to rest the case on this ground alone. Walbridge holds an absolute deed to these lots. Shaw conies into a court of equity, asserting that it is not a deed, in fact, but a mortgage. He who seeks equity, must do equity, and when Walbridge claims that the transaction, although once a mortgage, has changed its character —that the debt has been paid, and the parties have agreed that the property shall pay it, that the contract to reconvey has been canceled by mutual consent — equity will adjust the rights of the parties as they really are.
3. Again, it is claimed that an agreement by the mortgagor to convey his right of redemption to the mortgagee will not be countenanced by a court of equity.
It is true that at the time the mortgage is made no agreement can be made to deprive the mortgagee of his right to redeem. 1 Wash. R. Prop. (4th ed.), ch. xvi, § 1, par. 23, page 61; 1 Jones on Mort. § 251; Peugh v. Davis, S. C. U. S., April 15, 1878 ; The Reporter, vol. 5, page 673.
But it is equally true that he may subsequently part with this right, and the rule upon the subject maybe thus stated: *6 Courts will scrutinize such a transaction, and will not allow the mortgagee to take any undue advantage ; he will not be allowed to use his position as creditor to oppress, or to drive an unconscionable bargain. But where such a sale is a fair one, under all the circumstances, it will be sustained. This, we take it, is the result of the authorities. West v. Reed, 55 Ill. 242 ; 1 Jones on Mort. §§ 252, 1046 ; 1 Wash. R. Prop. 62; 1 Powell on Mort. 122, note n; Hyndman v. Hyndman, 19 Vt. 1: Green v. Butler, 26 Cal. 595 ; Revisen v. Hay, 2 Edw. Ch. 535; Peugh v. Dams, supra; Thompson v. Lee, 31 Ala. 292 ; Villa v. Rodriquez, 12 Wall. 323.
In 2 White & Tudor’s L. C. in Eq. (pt. 2) 1984, notes to Thornborough v. Baker and Howard, v. Harris, under the head, “ when right of redemption exists,” this subject is discussed, and the authorities collected.
In Riley B. Wilson v. Peter O. Carpenter, decided in the Supreme Court of Indiana, not yet reported, it was held: The proposition that a deed aud defeasance taken together constitutes a mortgage is well established. But the rule once a mortgage always a mortgage ” does not preclude any subsequent bona fide agreement in respect to the estate between the parties; and where a mortgagor voluntarily cancels the instrument of defeasance which he holds, it gives to the deed which it was intended to defeat the effect of an original absolute conveyance, as between the parties.
There can, therefore, be no objection to the sale of this equity of redemption and cancellation of the contract to reconvey, if the agreement was a fair one. As to the evidence upon the subject, we think it sustained the action of the courts below, and the judgments will be affirmed.

Judgment accordingly.