**In the Matter of Richard L. ROBERTS.**

No. 49S00–9906–DI–330.

Supreme Court of Indiana.

May 1, 2000.

Richard L. Roberts, Indianapolis, for the Respondent.

Donald R. Lundberg, Executive Secretary, D.J. Mote, Staff Attorney, Indianapolis, for the Indiana Supreme Court Disciplinary Commission.

PER CURIAM.

The Indiana Supreme Court Disciplinary Commission brought formal charges alleging that attorney Richard L. Roberts neglected the legal matters of seven clients, failed to communicate with them about their legal affairs and, after termination of his representation of them, failed to refund unearned legal fees. The Commission and Roberts have tendered a written agreement acknowledging misconduct and accepting suspension from the practice of law. That agreement is before this Court for final approval

Our jurisdiction in this matter is a result of the respondent's admission to the bar of this state on June 3, 1985. We note however, respondent has been suspended since May of 1999 for failure to comply with Continuing Legal Education requirements.

█ Under Count I of the verified complaint underlying this action, the parties agree that a client hired the respondent to file a petition for dissolution of marriage. The client initially paid $350 of an agreed $700 fee. In June of 1998, the client visited the respondent's office to sign a dissolution petition which the respondent had prepared, and paid an additional $100 towards the fee. The respondent informed the client the dissolution would be complete after 60 days. Despite several un-successful attempts to reach the respondent by telephone, by the end of July 1998 the client had received no communication from him about the case. The respondent never filed the dissolution petition and failed to refund any portion of the fee he received from the client.

█ As to Count II, the parties agree that in the spring of 1998, a client paid the respondent $300 to represent him in a post-dissolution matter initiated by the client's former wife. On May 18, 1998, the respondent notified the former wife's attorney that he was representing the client. On May 28, 1998, the respondent entered his appearance. The court set hearing for June 24, 1999, but the respondent failed to inform the client of the date. The respondent appeared at the June 24, 1998, hearing, but the client, unaware of the proceeding, did not. The respondent then obtained a continuance until August 26, 1998, but again did not inform the client of the hearing date.

During June 1998, the client attempted several times to contact the respondent by telephone, but was unsuccessful. The client filed a grievance against the respondent on July 31, 1998. On August 26, 1998, the respondent did not appear for the continued hearing in the client's case. The client, unaware of the hearing, likewise failed to appear. The court continued the hearing until September 23, 1998, and specifically ordered all parties to appear, sending notice to the respondent. The respondent did not inform the client about the September 23 hearing date and as a result the client did not appear on that day. Further, the respondent also himself failed to appear for the hearing. The former wife and her counsel appeared, and the court, finding the respondent had been served with notice of the hearing, entered an order modifying the client's dissolution decree without argument from the respondent or his client. The client, unable to communicate with the respondent, hired another attorney to seek modification of the court's September 23, 1998, order.

The respondent failed to refund any portion of the fee he received from the client.

■ Under Count III, the parties agree that in October 1996, a client hired the respondent to file a petition for dissolution of marriage. The respondent informed the client that he would not file the petition until the agreed fee of $400 was paid in full. The client began making payments to the respondent and by early 1997 had paid the entire fee. On April 2, 1997, the respondent filed a dissolution petition in the Lake Superior Court. On September 2, 1997, the parties filed stipulated provisional orders that were approved by the court. Thereafter, for nearly one year, the client heard nothing from the respondent concerning the status of her dissolution. She attempted to contact the respondent during the summer of 1998, but the respondent did not respond. After the provisional orders were filed on September 2, 1997, the respondent took no further action to complete the client's dissolution. Eventually, the client hired another attorney and paid an additional $300 in legal fees to complete the dissolution. The respondent never refunded any portion of the fee he received from the client.

■ As to Count IV, the parties agree that a client paid the respondent $400 to seek a court order emancipating a child for whom the client had a support obligation. The client heard nothing from the respondent after paying the $400, despite her repeated efforts to contact him, both by telephone and letter. The respondent rendered no legal services on behalf of the client, and failed to refund any portion of the fee received.

On August 17, 1998, the client filed a grievance against the respondent. On August 19, 1998, the Commission sent a letter notifying the respondent of the grievance and demanding a written response within twenty days. The respondent failed to respond. On October 8, 1998, the Commission sent, by certified mail, return receipt requested, a second demand for a written response to the client's grievance. The respondent received and signed for the certified mail on October 9, 1998, but again failed to respond.

■ Under Count V, the parties agree that in the spring of 1997 a client agreed to pay a fee of $900 to the respondent for his representation of her during a dissolution action. The respondent filed the petition for dissolution in the Lake Superior Court on August 15, 1997, and the court entered a provisional order. By November of 1997, the client had paid the respondent $750 towards the agreed fee. After November 1997, reconciliation appeared possible between the wife and husband, holding prosecution of the dissolution in abeyance. However, by the fall of 1998, the client again decided to go forward with the dissolution and attempted to contact the respondent. The respondent failed to communicate with the client in any way, failed to complete the dissolution, and failed to refund any of the fee received from the client for the dissolution.

■ In Count VI, we find that in the fall of 1998, a client hired the respondent to file a bankruptcy petition on her behalf. The client paid the respondent approximately $700 and turned over her bills and the original documents associated with her debts. Thereafter, despite several attempts by the client to reach the respondent by telephone, the client was unable to communicate with him. The respondent neither filed a bankruptcy petition for the client nor returned any portion of the fee paid to him for that purpose. The client was forced to hire another attorney to complete her bankruptcy.

■ With regard to Count VII, the parties agree that in November of 1993, a client hired the respondent to file and prosecute a trespass action concerning real estate the client had purchased at a tax sale. The respondent filed a complaint on behalf of the client in the Lake Superior Court. In March 1994, the city of Gary filed a condemnation action in the Lake

Superior Court, naming the client as a defendant, in order to acquire the tax sale property that was the subject of the previous trespass action. The respondent appeared for the client. In June 1994, a *Report of Appraisers* was filed in the condemnation action, to which the respondent objected and countered with a request for jury trial. In May 1996, the city took possession of the property after making payment to the Lake County Clerk's office. After May 1996, the respondent did nothing further on behalf of the client in the condemnation action.

In December of 1997, the client's trespass action settled, with the defendants agreeing to pay a total of $7,000 plus costs. The settlement was reported to the court on January 21, 1997, and the court ordered the respondent to file an agreed judgment against the defendants to reflect the settlement agreement. The respondent failed to file the agreed judgment, and did nothing further on the client's behalf in the trespass action. The court set the trespass action for a show cause hearing on July 30, 1998, pursuant to Ind.Trial Rule 41(E). The respondent failed to appear at the show cause hearing or otherwise protect the client's interests, and the case was dismissed for lack of prosecution.

In the fall of 1998, the client tried to reach the respondent by telephone to discuss the status of both the trespass and condemnation actions. The respondent failed to communicate with the client concerning either case.

Indiana Professional Conduct Rule 1.2(a) requires lawyers to abide by their clients' decisions regarding the objectives of representation.[1] The respondent violated that rule by his general failure to take action on his clients' behalves. Specifically, he failed to file his clients' dissolution and bankruptcy petitions, failed to obtain a requested emancipation of a child, and failed to complete a dissolution proceeding.

Professional Conduct Rule 1.3 requires lawyers to act with reasonable diligence and promptness when representing their clients.[2] The respondent violated that rule in Counts I, II, III, IV, VI, and VII by his failure to file requested dissolution and bankruptcy petitions, his failure to complete pending dissolutions, his failure to appear at post-dissolution hearings, his failure to obtain a requested emancipation of a child, his failure to take action on the condemnation action, and his failure to file an agreed judgment in the client's favor.

In all seven counts, the respondent violated Prof.Cond.R. 1.4(a) by his failure to keep clients reasonably informed about the status of pending matters, his failure to promptly comply with clients' reasonable requests for information, and his failure to respond to his clients' attempts to contact him.[3]

Professional Conduct Rule 1.4(b) requires that lawyers explain matters to their clients to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.[4] The respondent violated that rule by his actions in Counts I, II, III, IV, and VI because in each instance he abandoned representation of his clients' interests without prior notification or consultation with the client. His failure to notify a

---

1. Indiana Professional Conduct Rule 1.2(a) provides:

   A lawyer shall abide by a client's decisions concerning the objectives of representation . . . and shall consult with the client as to the means by which they are to be pursued.

2. Professional Conduct Rule 1.3 provides:

   A lawyer shall act with reasonable diligence and promptness in representing a client.

3. Professional Conduct Rule 1.4(a) provides:

   A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

4. Professional Conduct Rule 1.4(b) provides:

   A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

client about a hearing set in a post-dissolution matter also violated the provision.

Professional Conduct Rule 1.16(d) provides that lawyers, upon termination of representation, shall take steps to protect the interest of their clients.[5] Under all seven counts, the respondent violated the rule by failing, in whole or in part, to refund to his clients any portion of the retainer fees and, in one instance, by failing to return to the client case file materials to which the client was entitled.

Under Count IV, the respondent's failure to respond to the Commission's lawful demand for information violated Prof. Cond.R. 8.1(b).[6]

■ The Commission and the respondent have agreed that the respondent's conduct warrants a suspension from the practice of law for a period of not less than one year. Among the factors this Court weighs when considering proposed discipline are mitigating and aggravating circumstances. *Matter of Christoff and Holmes* 690 N.E.2d 1135 (Ind.1997). The only factor offered in mitigation here is the fact the respondent has not been the subject of previous disciplinary proceedings.

■ Serial neglect by attorneys of their clients' affairs indicates grave professional shortcomings activating this Court's obligation to protect the public from unfit practitioners. Generally, habitual indifference to professional obligation necessitates that an individual's fitness to practice law should be closely scrutinized. Accordingly, in similar cases involving patterns of neglect of clients' cases and attendant failure to communicate, this

Court has coupled a period of suspension with the requirement that the respondent affirmatively demonstrate to this Court his or her fitness to reenter the profession. *See, e.g., Matter of Golding*, 700 N.E.2d 464 (Ind.1998) (nine-month suspension without automatic reinstatement for an attorney found to have neglected the legal affairs of five clients); *Matter of Barnes*, 691 N.E.2d 1225 (Ind.1998) (six month suspension without automatic reinstatement for three counts of client neglect); *Matter of Toth*, 684 N.E.2d 493 (Ind.1997) (failure to take action on behalf of clients and failing to refund unearned fees coupled with other misconduct resulted in suspension of one year without automatic reinstatement).

In the present case, based upon the multiple instances of the respondent's failure to provide even the most basic legal services to his clients, we find that the agreed sanction of a one-year suspension without automatic reinstatement is appropriate. The respondent neglected to appear at hearings, failed to file pleadings, and couldn't manage to comply with a court order, all of which were detrimental to his clients' interest and often resulted in additional unnecessary legal expense for the clients. Even the simplest professional requirement, communicating with his clients, was beyond the respondent's ability. Our requirement that the respondent demonstrate his fitness to resume the practice of law after the initial one-year period of his suspension expires will ensure that other clients are not subjected to the respondent's neglect.[7]

5. Professional Conduct Rule 1.16(d) provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for the employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

6. Professional Conduct Rule 8.1(b) provides:

[A] lawyer ... in connection with a disciplinary matter, shall not:
(b) ... knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority ...

7. Indiana Admission and Discipline Rule 23(4)(b) provides the conditions that an petitioner for reinstatement must demonstrate in order to become readmitted to the bar of this state after suspension for ethical misconduct:

It is, therefore, ordered that Richard L. Roberts is hereby suspended from the practice of law for a period of one (1) year, beginning June 5, 2000. At the conclusion of this period of suspension, the respondent may petition this Court for reinstatement pursuant to Admission and Discipline Rule 23, Section 4.[8]

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the United States District Courts in this state, and the clerks of the United States Bankruptcy Courts in this state with the last known address of respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.

(b) A petition for reinstatement may be granted if the petitioner establishes by clear and convincing evidence before the disciplinary commission of this Court that:

(1) The petitioner desires in good faith to obtain restoration of his privilege to practice law;

(2) The petitioner has not practiced law in this State or attempted to do so since he or she was disciplined;

(3) The petitioner has complied fully with the terms of the order for discipline;

(4) The petitioner's attitude towards the misconduct for which he or she was disciplined is one of genuine remorse;

(5) The petitioner's conduct since the discipline was imposed has been exemplary and above reproach;

(6) The petitioner has a proper understanding of and attitude towards the standards that are imposed upon members of the bar and will conduct himself or herself in conformity with such standards;

(7) The petitioner can safely be recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence, and in general to aid in the administration of justice as a member of the bar and an officer of the Courts;

(8) The disability has been removed, if the discipline was imposed by reason of physical or mental illness or infirmity, or for use of or addiction to intoxicants or drugs;

(9) The petitioner has taken and passed the Multistate Professional Responsibility Examination (MPRE) with a scaled score of eighty (80). The MPRE shall be taken after the term of suspension or resignation has elapsed, and after the suspended or resigned attorney has met the requirements of Section 26 of this Rule. However, if the period of suspension is for one (1) year or less, the MPRE may be taken within six (6) months of the date the petition for reinstatement is filed.

8. Given the respondent's administrative suspension from the practice of law based on his noncompliance with Continuing Legal Education requirements, he must also cure those deficiencies before gaining readmission to the bar.