ATTORNEYS FOR APPELLANT
Joel Schumm
Indianapolis, Indiana

Daniel B. Schuetz
Franklin, Indiana

ATTORNEY FOR APPELLEE
Robert Henke
Indianapolis, Indiana



FILED
Sep 21 2010, 2:47 pm
CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 03S05-1004-JV-218

IN THE MATTER OF THE TERMINATION OF THE
PARENT-CHILD RELATIONSHIP OF I.B.,
MINOR CHILD, AND M.L., CHILD'S MOTHER,

*Appellant (Respondent below)*,

v.

INDIANA DEPARTMENT OF CHILD SERVICES,

*Appellee (Petitoner below)*.

Appeal from the Bartholomew Circuit Court, No. 03C01-0809-JT-2077
The Honorable Stephen R. Heimann, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 03A05-0912-JV-676

**September 21, 2010**

**Sullivan, Justice.**

Following termination of an absent mother's parental rights, the juvenile court declined to appoint counsel to appeal the termination. Indiana law requires court-appointed counsel for an indigent parent who appeals the termination of his or her parental rights – but only where the parent himself or herself authorizes the appeal.

**Background**

Mother gave birth to Child on July 9, 2007. Several days later, the Bartholomew County Office of the Indiana Department of Child Services ("State") removed newborn Child from Mother after Child tested positive for amphetamines. At the dispositional hearing on October 9, 2007, Mother admitted that Child was a Child in Need of Services ("CHINS"). The juvenile court adjudicated Child a CHINS on the same day and ordered Mother to participate in a series of services in order to establish her ability to provide appropriate care for Child. As part of the dispositional decree, the court ordered Mother to complete drug screens at the State's request.

In July and August, 2007, Mother complied with the requested drug screens and had negative results. However, after August, 2007, Mother did not keep to the scheduled visits, individual counseling sessions, or the drug screens. Mother, who had a history of drug and alcohol abuse, also refused to complete a required substance abuse evaluation. In December, 2007, Mother moved in with her mother ("Grandmother"), the relative caregiver for Child; Grandmother remained the primary caregiver for Child. During this time, Mother would be away from the home for long periods of time and was frequently intoxicated.

In February, 2008, a case manager for the State advised Mother that termination would be recommended if she did not follow through with her case plan. In March, 2008, Grandmother ordered Mother to leave the home because of Mother's excessive alcohol consumption. Thereafter, Mother missed numerous supervised visits and individual counseling sessions, and she had no further contact with Child after April, 2008. Consequently, the State terminated Mother's services and recommended the termination of Mother's parental rights. After this recommendation, Mother had no contact with any service providers (or Grandmother).

In October, 2008, the State petitioned to terminate Mother's parental rights. The State performed service through publication and submitted an affidavit from a case manager showing that it made a diligent search for Mother. Although Mother did not appear for any of the termination proceeding, the court appointed counsel to represent her. Before the start of the termina-

tion hearing, counsel moved to withdraw; he explained that he had never met Mother, had had no contact with her, and did not know how to locate her. The court declined counsel's request to withdraw.

In February, 2009, the juvenile court held a termination hearing; counsel participated in the hearing. Grandmother testified that she notified Mother of the hearing, but Mother indicated that she did not want anything to do with the State. Grandmother further testified that she had no address or telephone number to reach Mother. Based on the evidence presented at the hearing, on July 28, 2009, the court issued an order terminating Mother's parental rights.

Counsel filed a notice of appeal and moved for the appointment of appellate counsel. Counsel admitted, however, that he had never had contact with Mother and did not know whether she wanted to file an appeal. Counsel stated that he did not wish to do the appeal and that he filed the notice of appeal because he "was obligated to under the terms of [his] contract." (Appellee's App. 111.)[1]

The juvenile court denied the motion to appoint appellate counsel but appointed counsel to appeal this decision. The Court of Appeals affirmed the juvenile court's denial of the motion to appoint appellate counsel. In re Termination of the Parent-Child Relationship of I.B. and M.L., 922 N.E.2d 62, 68 (Ind. Ct. App. 2010). Counsel for Mother sought, and we granted, transfer. Ind. App. R. 58(A).

**Discussion**

**I**

In Indiana, the right to counsel in proceedings to terminate parental rights is granted by statute. Indiana Code section 31-32-2-5 provides that "[a] parent is entitled to representation by

---

[1] The public defender contract indicates that "[t]he Judge and Attorney agree that the Attorney must represent all persons in legal proceedings to the extent that, if necessary, a motion to correct error[] must be filed and argued and a praecipe for the record for the purposes of an appeal must be filed." (Appellant's Br. 8.)

counsel in proceedings to terminate the parent-child relationship." Indiana Code section 31-32-4-1 provides that "[t]he following persons are entitled to be represented by counsel: . . . (2) [a] parent, in a proceeding to terminate the parent-child relationship, as provided by IC 31-32-2-5." And Indiana Code section 31-32-4-3 further explains that:

> (a) If:
> (1) a parent in proceedings to terminate the parent-child relationship does not have an attorney who may represent the parent without a conflict of interest; and
> (2) the parent has not lawfully waived the parent's right to counsel under IC 31-32-5 (or IC 31-6-7-3 before its repeal);
> the juvenile court shall appoint counsel for the parent at the initial hearing or at any earlier time.

Indiana courts have held that parents whose parental rights are being terminated against their will have three rights: (1) the right to be represented by counsel; (2) the right to have counsel provided if the parent is indigent; and (3) the right to be informed of the two preceding rights. Taylor v. Scott, 570 N.E.2d 1333, 1335 (Ind. Ct. App. 1991), trans. denied.

The Court of Appeals in this case limited "proceeding" to the time between the commencement and the entry of judgment on the termination of parental rights determination and cited Black's Law Dictionary to support its assertion.[2] In re I.B. and M.L., 922 N.E.2d at 66. Black's Law Dictionary, however, provides several definitions for the word "proceeding." They include:

> 1. The regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment. 2. Any procedural means for seeking redress from a tribunal or agency. 3. An act or step that is part of a larger action. 4. The business conducted by a court or other official body; a hearing.

---

[2] The Court of Appeals also relied on Baker v. Marion County Office of Family & Children, 810 N.E.2d 1035, 1038 (Ind. 2004) (noting that the "Code does not provide for appointment of counsel to seek post-judgment relief"). In re I.B. and M.L., 922 N.E.2d at 67. As the Appellant points out, Baker did not address the appointment of counsel on direct appeal in a termination of parental rights case; the focus in Baker was an ineffective assistance of counsel claim that frequently involves a collateral proceeding.

4

1324 (9th ed. 2009). In our view, a "proceeding" is not limited to the trial court stage. According to the second Black's entry, for example, a proceeding encompasses any step in the process of a resolution of a matter before a court. Thus, for the purposes of the statutes implicated in this case, a proceeding does not limit the appointment of counsel to the trial proceeding but rather applies to the entire process, including through the direct appeal proceeding. See, e.g., Thompson v. Thompson, 811 N.E.2d 888, 929 (Ind. Ct. App. 2004) (allowing attorney fees to be awarded for proceedings occurring after entry of final judgment in marriage dissolution proceedings), trans. denied, 831 N.E.2d 740 (Ind. 2005).

Other jurisdictions with similar statutory language have found a right to appointed appellate counsel. See In re Adoption of K.L.P., 763 N.E.2d 741, 753 (Ill. 2002) (finding that an indigent parent had a statutory right to counsel on appeal in termination of parental rights cases); In re Jacqueline H., 577 P.2d 683, 687 (Cal. 1978) (concluding "that the Legislature could not have intended to withhold from an indigent parent the right to an effective appeal, and, therefore, the services of appellate counsel in [termination] proceedings"); In re Chambers, 152 N.W.2d 818, 820-21 (Iowa 1967) (holding that an indigent parent in exercising her statutory right of appeal from a decree severing her parental rights was entitled to assistance of counsel at public expense). The Iowa Supreme Court stated that:

> We see no reason why the appointment of counsel for plaintiff under [the statute] should be construed to terminate when the hearing before the juvenile court was concluded. That section does not so provide; and when plaintiff was given the statutory right to appeal, it must have been contemplated that such an appeal would require the services of counsel.

Id. at 821.

The Legislature has provided for counsel in proceedings to terminate the relationship of parent and child. I.C. § 31-32-2-5. The statute ensures that parents who are indigent are provided access to the courts in what is "among the most severe forms of state action . . . ." M.L.B. v. S.L.J., 519 U.S. 102, 128 (1996). The need for counsel to protect the interests of a parent does not diminish on appeal. We hold that our statutes dictate that the right to counsel continues through all stages of the proceeding to terminate the parent-child relationship, including appeal.

# II

## A

As discussed above, the Indiana Code provides parents the right to representation by counsel in termination proceedings, including appeals. This case presents the dilemma counsel faces where, after a client's parental rights have been terminated, the client does not cooperate or communicate his or her instructions with respect to an appeal to the attorney. In an ordinary civil case in tort or contract, an attorney cannot proceed without a client's instruction. In the words of the United States Court of Appeals for the Second Circuit: "[a]n attorney's only ethical obligation is to serve his client loyally and competently . . . . Hence a client's decision not to pursue an appeal is one a lawyer must abide by because such a decision is exclusively that of the client." Soliman v. Ebasco Servs. Inc., 822 F.2d 320, 323 (2d Cir. 1987) (citing Model Code of Prof'l Responsibility, EC7-7, EC7-8, EC7-9 (as amended, 1980)), cert. denied, 484 U.S. 1020 (1988). But should that be the case in termination cases where so much is at stake for both parent and child?

Our Rules of Professional Conduct provide general guidance on this question. Indiana Professional Conduct Rule 1.2 describes the proper decision-making relationship between the lawyer and client. Koval v. Simon Telelect, Inc., 693 N.E.2d 1299, 1303 n.6 (Ind. 1998). Decisions relating to the objectives of the representation belong to the client. See Ind. Prof'l Conduct R. 1.2(a). Specifically, Indiana Professional Conduct Rule 1.2(a)[3] requires lawyers to abide by the client's decision as to the objectives of representation. In re Roberts, 727 N.E.2d 705, 709 (Ind. 2000). The lawyer is also required to consult with the client as to the means by which the client's objectives are to be pursued. Ind. Prof'l Conduct R. 1.2(a). Professional Conduct Rule 1.3 provides "[a] lawyer shall act with reasonable diligence and promptness in representing a client." The lawyer also has the professional obligation to maintain reasonable communication between the lawyer and the client in order to participate effectively in the representation. Id. at

---

[3] "[A] lawyer shall abide by a client's decisions concerning the objectives of representation and . . . shall consult with the client as to the means by which they are to be pursued." Ind. Prof'l Conduct R. 1.2(a).

R. 1.4 cmts. 2-5.  After all, the lawyer is expected to consult with the client about the means to employ in order to accomplish the client's objectives.  <u>Id.</u> at R. 1.4(a)(2).  And Rule 1.4(b) requires the lawyer to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."  <u>See</u> <u>In re Roberts</u>, 727 N.E.2d at 709.

A rule of not proceeding absent instructions is consistent with decisions in other jurisdictions (though each is subject to unique statutory regimes) that have considered the issue in family law matters.  <u>In re Alma B.</u>, 26 Cal. Rptr. 2d 592 (Cal. Ct. App. 1994), addressed whether an attorney could file an appeal from an order identifying adoption as the permanent plan for the mother's children without the client's consent.  The court held that consent could not be imputed from the mere fact that the attorney had a stated belief that the client objected to the termination of parental rights decision, at least where there is contradictory conduct.  <u>Id.</u> at 595.  The court found three actions that belied the claim by counsel that the parent wanted custody of the minors: (1) the parent's failure to comply with a drug rehabilitation program; (2) her failure to appear at the selection and implementation hearing; and (3) the ultimate abandonment of her children. <u>Id.</u>;[4]  <u>see also</u> <u>In re Adoption/Guardianship of Darjal C.</u>, 992 A.2d 503, 517 (Md. Ct. Spec. App. 2010) (holding that the mother in a termination of parental rights proceeding had to make the ultimate decision whether to appeal, where the mother's attorney filed an appeal on her behalf without her express authorization and mother had no knowledge that an appeal was filed on her behalf); <u>Seder v. Seder</u>, 841 A.2d 1074, 1076 (Pa. Super. Ct. 2004) (finding that a mother's counsel could not appeal an order awarding father child support without at least tacit approval from the mother); <u>Brode v. Brode</u>, 298 S.E.2d 443, 445 (S.C. 1982) ("The ultimate election to bring an appeal is to be made by the client, not the attorney.  The rule is well settled . . . ."); <u>In re Welfare of Parzino</u>, 587 P.2d 201, 202 (Wash. Ct. App. 1978) (court-appointed attorney could not appeal order terminating parental rights where mother had been absent since shortly after child was born).

---

[4] After <u>In re Alma B.</u>, the court began a practice, upon receiving a notice of appeal signed by counsel, of issuing an order questioning whether the parent had authorized the appeal and invited a response.  <u>See</u> <u>In re Steven H.</u>, 103 Cal. Rptr. 2d 649, 653 (Cal. Ct. App. 2001); <u>Suzanne J. v. Superior Court</u>, 54 Cal. Rptr. 2d 25, 26-27 (Cal. Ct. App. 1996); <u>Guillermo G. v. Superior Court</u>, 39 Cal. Rptr. 2d 748, 751-52 (Cal. Ct. App. 1995).  In 2007, this practice was discontinued when the court concluded that it should presume an attorney's authority to represent his or her purported client.  But the court made clear that "the attorney signing a notice of appeal . . . impliedly represent[s] . . . that his or her client has authorized the appeal." <u>In re Helen W.</u>, 57 Cal. Rptr. 3d 914, 920 (Cal. Ct. App. 2007).

"There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current 'home,' under the care of his parents or foster parents, especially when such uncertainty is prolonged." Baker v. Marion County Office of Family & Children, 810 N.E.2d 1035, 1040 (Ind. 2004) (quoting Lehman v. Lycoming County Children's Servs. Agency, 458 U.S. 502, 513-14 (1982)). When considering the best interest of the child, permanency is a central consideration. In re Termination of the Parent-Child Relationship of G.Y. and R.Y., 904 N.E.2d 1257, 1265 (Ind. 2009). The State has a significant parens patriae interest in protecting the welfare of the children involved; it does not gain when it separates children from the custody of fit parents. Santosky v. Kramer, 455 U.S. 745, 766-67 (1982). "The purpose of terminating parental rights is not to punish parents, but to protect the children." Egly v. Blackford County Dep't of Pub. Welfare, 592 N.E.2d 1232, 1234 (Ind. 1992). The State has a compelling interest in protecting the welfare of the child by intervening in certain situations, In re E.P. and J.P., 653 N.E.2d 1026, 1032 (Ind. Ct. App. 1995), but delay in the adjudication of a case can impose significant costs upon the functions of government as well as an intangible cost to the life of the child involved.

An appeal of a decision to terminate parental rights, by its very nature, causes delay and prolongs the process of uncertainty for a child. To sanction an appeal as a matter of course would not further the objective of bringing permanency to the child through the prompt resolution of termination proceedings. As such, the policy objective of permanency is consonant with the lawyer's ethical obligations.

**B**

If a parent is present at the termination hearing and contests the termination of parental rights order, the parent is entitled to appeal the termination order with the assistance of court-appointed counsel as discussed in part I, supra – although the parent can certainly waive the right to appeal. When the parent does not appear at the termination of parental rights trial, is not present when the termination of parental rights order is issued, or has not had contact with counsel, the parent's trial lawyer has an obligation to contact the client and inform the client of the

result of the termination proceeding.  See Ind. Prof'l Conduct R. 1.3 and 1.4.  At this point, the attorney can receive instructions with respect to an appeal.  See id. at 1.2.

In the event that the lawyer does not know the whereabouts of the parent, the lawyer must use due diligence to locate the client during the time period between the entry of the termination of parental rights order and the time that the notice of appeal is due.[5]  If a lawyer is unable to locate the client despite due diligence or if the lawyer cannot get clear instructions from the client with respect to an appeal, the lawyer should not file a notice of appeal.  See Ind. Prof'l Conduct R. 1.3 cmt. 4 ("[I]f a lawyer has handled a judicial or administrative proceeding that produced a result adverse to the client and the lawyer and the client have not agreed that the lawyer will handle the matter on appeal, the lawyer must consult with the client about the possibility of appeal . . . .").  Should the parent resurface and seek to pursue an appeal after the period for filing a notice of appeal has closed, our trial rules may provide a remedy in certain situations.  See, e.g., In re Adoption of T.L.W. and T.S.W., 835 N.E.2d 598, 601 (Ind. Ct. App. 2005); In re Adoption of I.K.E.W., 724 N.E.2d 245, 250 (Ind. Ct. App. 2000).[6]

## C

In this case, Mother failed to appear at the termination of parental rights hearing and the hearing regarding the appointment of appellate counsel following the decision to terminate her parental rights.  Her whereabouts were unknown.  She had not been in contact with her lawyer or the State for many months before it filed the termination action.  Due to Mother's own inaction, her counsel could not effectively or ethically represent that she wanted to file an appeal.  "[A] child's right to a stable home cannot be put on hold interminably because a parent is absent from the courtroom and has failed to contact his or her attorney."  In re Dependency of C.R.B., 814 P.2d 1197, 1202 (Wash. Ct. App. 1991) (citation omitted).  Her lawyer asked the court to appoint

---

[5] "A party initiates an appeal by filing a Notice of Appeal with the trial court clerk within thirty (30) days after the entry of a Final Judgment."  Ind. App. R. 9(A)(1).

[6] For example, under Trial Rule 60(B)(8), "the party asking for relief must show that its failure to act or the result was not merely due to an omission involving mistake, surprise, or excusable neglect.  Rather, some extraordinary circumstances must be affirmatively demonstrated."  In re Adoption of I.K.E.W., 724 N.E.2d at 250 (quoting Weppler v. Stansbury, 694 N.E.2d 1173, 1176 (Ind. Ct. App. 1998)).

appellate counsel to appeal the decision. We find that our rules of professional conduct, guidance from other jurisdictions, and the principal policy considerations animating termination of parental rights adjudications all dictate that, on the facts of this case, the lawyer had no basis to file an appeal and the trial court was correct not to appoint appellate counsel for that purpose.

**Conclusion**

Parents have a statutory right to appellate counsel to appeal an order terminating their parental rights. This right to appeal can be waived. And it is improper for a parent's trial lawyer, after the lawyer has exercised due diligence to determine the parent's wishes with respect to an appeal, to pursue an appeal without the parent's authorization.

The judgment of the juvenile court denying appointment of appellate counsel to represent Mother in an appeal of the involuntary termination of the parent-child relationship order is affirmed.

Shepard, C.J., and Dickson, Boehm, and Rucker, JJ., concur.