**In the Matter of Raymond F. FAIRCHILD.**

No. 49S00–0103–DI–161.

Supreme Court of Indiana.

Nov. 4, 2002.

 

Karl L. Mulvaney, Bingham & McHale, Indianapolis, IN, for the Respondent.

Donald R. Lundberg, Executive Secretary, Dennis McKinney, Staff Attorney, Indianapolis, IN, for the Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

### PER CURIAM.

Indianapolis attorney Raymond F. Fairchild neglected the legal matters of five clients and subsequently failed to cooperate with the Disciplinary Commission during resultant investigations. Because the respondent has demonstrated significant efforts since those transgressions to rectify the conditions he claims led to his misconduct, we find today that a portion of his suspension from the practice of law we impose today for his misconduct should be suspended to probation.

This matter comes before this Court upon the hearing officer's report on the Commission's verified application for judgment on the complaint, filed pursuant to Ind. Admission and Discipline Rule 23(14)(c), and occasioned by the respondent's failure to answer timely the Commission's verified complaint for disciplinary action. The hearing officer did hold an evidentiary hearing on April 12, 2002, on issues in purported mitigation and aggravation of the respondent's conduct. Following that hearing and the hearing officer's report to this Court upon the Commission's application for judgment on the complaint, the respondent petitioned this Court for review of the hearing officer's findings, as well as to supplement the record. We find that this latter petition should be denied.

The respondent is an attorney in good standing, admitted to practice law in Indiana on September 22, 1971. He practices law in Indianapolis.

Taking the matters alleged in the Commission's verified complaint to be true, we now find that, pursuant to Count I, in 1992 a client hired the respondent to represent her in a medical malpractice case. In October 1993, the respondent filed a malpractice claim on behalf of the client before the Indiana Department of Insurance. In January 1998, the medical review panel issued its opinion that the evidence did not support a conclusion that the medical providers had failed to meet the applicable standard of care. Shortly thereafter, the respondent filed suit against the attending physician and the clinic where the injury occurred. On April 8, 1998, the defendants moved for summary judgment, based on the opinion of the medical review panel. The trial court set the motion for summary judgment for hearing on September 10, 1998. The respondent did not respond to the motion, never submitting counter-affidavits or other evidence that the defendants had breached their duty of care to the client. The respondent failed to attend the summary judgment hearing, and on September 21, 1998, the court entered summary judgment for the defendants. The respondent never advised the client that summary judgment had been entered against her. In 1999, the client contacted the court to ascertain the status of her case and only then learned that summary judgment had been entered against her. The client routinely telephoned the respondent to inquire about her case but he never took her telephone calls or called her back.

The respondent twice failed to respond to the Commission's later demands for response to the grievance the client filed against the respondent.

We find that the respondent violated Ind. Professional Conduct Rule 1.3[1] by

---

**1.** Professional Conduct Rule 1.3 provides:

A lawyer shall act with reasonable diligence

failing to prepare and file with the court a response to the defendants' motion for summary judgment and failing to attend the hearing on defendants' motion for summary judgment to represent his client at that hearing; Prof.Cond.R. 1.4(a)[2] by failing to keep the client informed about the status of her case, including the entry of summary judgment against her, and by failing to respond to her telephone calls inquiring about her case; and Prof. Cond.R. 8.1(b)[3] by failing to respond to the Commission's demand for response to the client's grievance.

■■■■ Pursuant to Count II, we now find that in August 1997, a client hired the respondent to represent him in a worker's compensation case against the client's former employer. The respondent filed a timely claim on the client's behalf with the Indiana Worker's Compensation Board. The respondent was unable to develop strong medical evidence to support the client's disability claim, which prompted the client to agree to settle his claim for $1,000. In September 1999, the client and his former employer signed a compromise settlement agreement, and the Worker's Compensation Board entered an award for $1,000. The former employer's attorney later provided to the respondent a check for $1,000 pursuant to the settlement. The respondent misplaced the check and did not disburse to the client his share. The client telephoned the respondent and wrote to him inquiring about the payment of the settlement, but the respondent never replied. In March of 2000, in responding to the Commission's demand for a response to the client's grievance, the respondent found the check, which by that time was stale.

We find that the respondent violated Prof.Cond.R. 1.3 by failing to transmit to the client the settlement check before it went stale; Prof.Cond.R. 1.4(a) by failing to advise the client that he had received the settlement check, and by failing to respond to his client's telephone inquiries about his case; Prof.Cond.R. 1.15(a)[4] by failing to deposit the settlement check into his trust account, and Prof.Cond.R. 1.15(b)[5] by failing to deliver promptly to the client his share of the settlement.

and promptness in representing a client.

2. Professional Conduct Rule 1.4(a) provides:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

3. Professional Conduct Rule 8.1(b) provides:

An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

. . .

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

4. Professional Conduct Rule 1.15(a) provides:

A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation. A lawyer may deposit his or her own funds reasonably sufficient to maintain a nominal balance.

5. Professional Conduct Rule 1.15(b) provides:

Upon receiving funds or other property in which the client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule

■ Pursuant to Count III, we now find that a client was injured on the job in December 1995, had surgery on January 31, 1996, and returned to work in June 1996. The client hired the respondent in January 1996 to seek worker's compensation for her. Shortly after the client's accident, the employer notified its insurance carrier. On January 15, 1996, the respondent notified the insurer that he was representing the client, whose medical bills the insurer had paid. Based on its physician's examination of the client, the insurer determined that she was entitled to a total permanent partial impairment (PPI) payment of $1,000. On November 21, 1996, the insurer sent its PPI offer directly to the client, even though it had been advised that the respondent represented her. Shortly thereafter, the insurer discovered its mistake and sent its PPI offer to the respondent. On April 2, 1997, the insurer's claim representative telephoned the respondent's office to request a response to the offer. The respondent never returned the insurer's call.

On May 16, 1997, the insurer again communicated its offer, along with all of the documents necessary to conclude settlement of the claim, to the respondent. In early 1998, the insurer's claim representative found the claim was still unresolved. In reviewing the file, the claim representative discovered a second medical opinion submitted by the respondent for his client. The second opinion evaluated the client's PPI as greater than the insurer's physician estimated. Consequently, the insurer increased its PPI offer to $1,350 in an attempt to settle the claim, sending the offer and new copies of the proposed agreement to the respondent on February 23, 1998. The respondent never replied.

The client attempted to contact respondent with no success between February 1998 and April 1999.

We find that the respondent violated Prof.Cond.R. 1.3 by failing for more than four years to prosecute the client's claim before the Worker's Compensation Board; Prof.Cond.R. 1.4(a) by failing to respond to the client's inquiries about her case from February 1998 through April, 1999; and Prof.Cond.R. 1.4(a) by failing to inform the client of the insurer's increased PPI offer.

Under Count IV, we now find that in July 1992, a client suffered an on-the-job injury. The client initially hired another attorney to represent him in his worker's compensation claim. The client's employer's insurance carrier paid the client temporary total disability (TTD) payments of approximately $360 per week from July 25, 1992 to June 18, 1993. On June 11, 1993, the insurer offered the client a permanent partial impairment (PPI) payment of $5,500, based on a physician's evaluation of the client. The client did not accept the offer. The client's initial attorney withdrew in January 1995, and the client then hired the respondent to pursue the worker's compensation claim. The respondent obtained the client's file, including the PPI offer of $5,500 and the insurer's notice to the client that its TTD payments would end on June 18, 1993. On June 27, 1995, the insurer offered the client a PPI payment of $5,000, based on a physician's evaluation of the client. The offer was contemporaneously communicated to the respondent. The respondent never filed an application for adjustment of claim with

or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

the Worker's Compensation Board on the client's behalf.

From the summer of 1995 until the client filed a grievance with the Commission in February 1999, the client repeatedly telephoned the respondent to check on the status of his case claim. The respondent never returned the calls. On June 4, 1998, the client's wife sent a letter to respondent requesting information concerning the work the respondent had done to that point. The respondent never replied.

The Commission twice demanded from the respondent a response to the client's subsequent grievance. The respondent did not respond to the demands for some 21 months after the response was due.

We find that the respondent violated Prof.Cond.R. 1.3 by failing to timely prosecute the client's worker's compensation claim; Prof.Cond.R. 1.4(a) by failing to keep the client informed about the status of his case, and by failing to respond to his telephone calls inquiring about his case; and Prof.Cond.R. 8.1(b) by failing promptly to respond to the Commission's demand for information.

■■■ As to Count V, we now find that a client was injured at his workplace on May 4, 1996. In June 1996, the client hired the respondent to represent him in a worker's compensation claim. The employer's physicians eventually cleared the client to return to work, finding no permanent partial impairment. The respondent sent the client to a physician for examination. In a letter to respondent, the physician reported that he had found a congenital abnormality that might have been aggravated by the client's accident, and recommended a CT scan. The respondent concluded that the medical opinion foreclosed any possibility of pursuing a worker's compensation claim because the physician did not assign a permanent partial impairment rating to the client.

The respondent did not advise the client that he did not believe he could bring a worker's compensation case on his behalf and he never asked the client if he wanted a CT scan or re-examination by another physician. The respondent never filed an application for adjustment of claim with the Worker's Compensation Board on behalf of the client.

Although the client frequently telephoned the respondent, his calls went unanswered.

The client later hired a new lawyer, who arranged for the client to be examined by another physician, who determined that the client suffered a 5% permanent partial impairment.

We find that the respondent violated Prof.Cond.R. 1.3 by failing to advise client of the respondent's evaluation of the client's case following the physician's report, and Prof.Cond.R. 1.4(a) by failing to respond to the client's telephone calls, and by failing to ask the client whether he wanted to employ another physician to attempt to prove he had suffered permanent partial impairment.

At hearing on extenuating and aggravating factors, the respondent presented evidence which he contended was mitigating: that he suffered from personal and emotional problems during the time of his misconduct, including his wife's serious illness and the death of both his and his wife's parents. He also presented evidence of his good reputation generally in the local legal community. The hearing officer specifically attributed mitigating value to this evidence.

The Commission presented evidence of three aggravating circumstances: that the respondent committed multiple violations of the *Rules of Professional Conduct;* that he engaged in misconduct when he had

substantial experience in the practice of law, being an attorney since 1971; and that he was privately reprimanded by this Court in 1984 for unrelated conduct.

The hearing officer also found a fourth aggravating circumstance not argued by the Commission: that the respondent showed a bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency.

The respondent also contended that evidence that he has regularly attended the Indiana Judges and Lawyers Assistance Program ("JLAP") Depression Support Group and that he has made some efforts to see a psychiatrist in the near future should be viewed with mitigating value. The hearing officer concluded, however, that the respondent offered no medical evidence that he is suffering from a mental disability or that his misconduct was caused by a mental disability, and therefore failed to find that the respondent suffers from a recognized physical or mental disability or impairment. Consequently, the hearing officer declined to attach mitigating value to the respondent's attendance at the JLAP Depression Support Group and his belated efforts to seek an assessment.

■ The respondent also urges us to recognize his restitution to his clients (or, in two instances, his promise that he will provide restitution), as a mitigating factor. We conclude, as did the hearing officer, that the respondent's restitution or promise of restitution should not be viewed as an extenuating factor, given that in each case he provided it to his former clients only after the client had filed a grievance with the Commission.

■ Although we agree with the hearing officer that the respondent has failed to demonstrate a mental disability as a causal factor in his misconduct, we do ascribe some mitigating value to the respondent's apparent efforts to address the personal stresses that contributed to his misconduct, while nonetheless recognizing that the respondent's neglect was severe and warrants suspension designed to protect the public from further harm. *See e.g., Matter of Roberts,* 727 N.E.2d 705 (Ind.2000) (suspension for not less than one year for seven counts of client neglect and failure to respond to the Commission); *Matter of Golding,* 700 N.E.2d 464 (Ind. 1998) (suspension for not fewer than nine months for five counts of client neglect and failure to respond to the Commission). More specifically, the respondent's efforts so far lead us to conclude that he should be allowed to continue to practice after a period of suspension, provided he continues to obtain the assistance he needs to ensure that he does not commit similar ethical violations in the future.

Accordingly, we order that the respondent be suspended from the practice of law for a period of not less than one (1) year, effective December 14, 2002. The first six (6) months of the suspension shall be executed, with the balance stayed to a two (2) year period of probation. The terms of this probation are as follows:

- The respondent shall continue to be monitored by JLAP and thereafter as JLAP recommends to the Commission;

- The respondent shall continue to attend regularly monthly depression support group meetings as recommended by JLAP;

- The respondent shall agree that information from JLAP may be shared with the Commission;

- The respondent shall follow-through on assessment and treatment recommendations from the physicians noted

in the respondent's *Petition for Review;*

- The respondent shall continue to utilize computer systems and software to keep current on active cases; and

- The respondent shall pay all costs pertaining to his treatment and monitoring.

Should the respondent successfully conclude his term of probation, he shall automatically be reinstated fully to the practice of law in this state. Should the Commission advise this Court that the respondent has failed to meet any of the terms of this probation, the stay of the second six (6) months of the respondent's suspension shall be rescinded, and the respondent shall immediately be suspended for the balance of his term of suspension, after which any reinstatement shall be subject to the provisions of Admis.Disc.R. 23(4).

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to the hearing officer, and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the United States District Courts in this state, and the clerks of the United States Bankruptcy Courts in this state with the last known address of respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.